[L. A. No. 1330.  In Bank.—May 29, 1903.]

CAROLINE W. DOBBINS, Appellant, v. CITY OF LOS ANGELES, Respondent.

Municipal. Ordinance—Police Power—Regulation of Gas-Works.—A municipal ordinance making it unlawful to erect or maintain gas-works, or to store gas, except within certain defined limits, is a proper exercise of police power, and not violative of the fourteenth amendment to the federal constitution.

Id.—Scope of Police Power.—The police power is not restricted to the regulation only of such interferences with the public health and safety as come strictly within the common-law definition of a "nuisance." Within the reasonable scope of the police power, the legislative body is the exclusive judge, and it cannot be said judicially that volatile, inflammable, explosive, and bad-smelling gas is beyond the scope of that power.

Id.—Motives of Legislative Body—Demurrer to Complaint.—The motives of the municipal legislature which passed the ordinance cannot be considered in a judicial proceeding in which its validity is involved, and an averment of the complaint that the ordinance was adopted, not for the purpose of protecting the public interests, but for the purpose of protecting and favoring another gas company named, is immaterial upon demurrer to the complaint.

Id.—Lawful Commencement of Works—Expenditure—Building Permit—Change of Limits—City not Estopped.—The fact that the plaintiff had lawfully commenced its work by purchasing land for a site within the limits allowed by the original ordinance, and had expended money in laying a foundation, and had entered into contracts for the erection of its works, and had secured a building permit from the fire commissioners in pursuance of fire and building ordinances, cannot estop the city from the further exercise of its police power to change the limits so as to make the erection and maintenance of such gas-works unlawful where begun and existing within the changed limits.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, and Lee, Scott, Bailey & Chase, for Appellant.

The business of erecting and maintaining a gas-works is a lawful occupation. (Const., art. XI, sec. 19; *Ex parte Johns-*

*ton,* 137 Cal. 115; *People* v. *Stevens,* 62 Cal. 209.) The amendatory ordinance of March 3, 1902, was a violation of vested rights lawfully acquired in a lawful business. (*Calder* v. *Bull,* 3 Dall. 394; *Farrington* v. *Tennessee,* 95 U. S. 679; *Pacific Mail S. S. Co.* v. *Jolliffe,* 2 Wall. 457; *Classen* v. *Chesapeake Guano Co.,* 81 Md. 258; *Roberts* v. *Brooks,* 71 Fed. 914; *Baltimore Trust Co.* v. *Baltimore,* 64 Fed. 153; *Lewis* v. *City of Newton,* 75 Fed. 884; *Cleveland City R. R. Co.* v. *City of Cleveland,* 94 Fed. 385; *City Ry. Co.* v. *Citizens' Street Ry. Co.,* 166 U. S. 562.) The ordinance of March 3, 1902, is void, as depriving the plaintiff of property without due process of law. (*City of Chicago* v. *Netcher,* 183 Ill. 104;[1] *Frorer* v. *People,* 141 Ill. 171; *Ramsey* v. *People,* 142 Ill. 380; *Bracewill Coal Co.* v. *People,* 147 Ill. 66;[2] Cooley on Constitutional Limitations, p. 393.) A court of equity has power to restrain by injunction a municipality from instituting criminal proceedings when such criminal prosecutions are threatened under color of an invalid ordinance for the purpose of compelling the relinquishment of a property right. (*Central Trust Co.* v. *Citizens' Street Ry. Co.,* 80 Fed. 225; 82 Fed. 1; *Reagan* v. *Farmers'* etc. *Trust Co.,* 154 U. S. 326; *Southern Express Co.* v. *Mayor, etc., of Ensley,* 116 Fed. 756; *Lottery Co.* v. *Fitzpatrick,* 3 Woods, 222, Fed. Cas. No. 8,541; *Osborn* v. *United States Bank,* 9 Wheat. 738; *Wood* v. *City of Brooklyn,* 14 Barb. 425; *Manhattan Iron Works* v. *French,* 12 Abb. N. C. 446; *Rushville* v. *Rushville Natural Gas Co.,* 132 Ind. 575; *Los Angeles City Water Co.* v. *City of Los Angeles,* 103 Fed. 711; *City of Atlanta* v. *Gate City Gas Co.,* 71 Ga. 196.)

W. B. Mathews, City Attorney, and Davis & Rush, for Respondent.

A court of equity has no power to interfere with the enforcement of criminal laws. (*Ex parte Sawyer,* 124 U. S. 200-225; *Suess* v. *Noble,* 31 Fed. 855; *Hemsley* v. *Myers,* 45 Fed. 286; *Fitts* v. *McGhee,* 172 U. S. 528; *Minneapolis Brewing Co.* v. *McGillivray,* 104 Fed. 259.) The ordinances were within the police power conferred upon the city. (Const., art. XI, sec. 11; Charter of Los Angeles, Stats. 1889, p. 458, art. I, sec. 2, art. III, secs. 27-40.) The city of Los Angeles,

---

[1] 75 Am. St. Rep. 93.        [2] 37 Am. St. Rep. 206.

under its police power, was authorized to enact and enforce its ordinance, irrespective of the question as to whether or not gas-works are a nuisance *per se.* (*Ex parte Shrader,* 33 Cal. 283; *Ex parte Lacey,* 108 Cal. 326; [1] *Ex parte Heilbron,* 65 Cal. 609; *Canfield* v. *United States,* 167 U. S. 518; *Crowley* v. *Christensen,* 137 U. S. 87; *Barbier* v. *Connolly,* 113 U. S. 27; *Soon Hing* v. *Crowley,* 113 U. S. 703; *Cleveland* v. *Citizens' Gaslight Company,* 20 N. J. Eq. 201; 1 Dillon on Municipal Corporations, 4th ed., pp. 216, 472; *Ex parte Byrd,* 84 Ala. 17; [2] *Welch* v. *Hotchkiss,* 36 Conn. 140; [3] *Cronin* v. *People,* 82 N. Y. 318; [4] *Milne* v. *Davidson,* 5 Martin N. S. 409; [5] *Milwaukee* v. *Gross,* 21 Wis. 241; [6] 2 Tiedeman on Police Powers, p. 740.) A municipality cannot give, grant, barter away, or part with its right to exercise the police power delegated to it by the state. (Cooley on Constitutional Limitations, 6th ed., p. 341; Russell on Police Powers, p. 88; *Davenport* v. *City of Richmond,* 81 Va. 636; [7] *Newson* v. *City of Galveston,* 76 Tex. 559; *Butchers' Union* v. *Crescent City,* 111 U. S. 746; *Northwestern Fertilizing Co.* v. *Hyde Park,* 97 U. S. 659.) All interests in property and rights in contracts, whether vested or not, are acquired and held by individuals and corporations subject to the right of the state and municipality to exercise their "police power" for the protection of the lives, health, safety, and comfort of their citizens. (2 Story on the Constitution, sec. 1954; Cooley on Constitutional Limitations, 6th ed., p. 707; *Mugler* v. *Kansas,* 123 U. S. 669; *Commonwealth* v. *Alger,* 7 Cush. 96; *Corporation of Knoxville* v. *Bird,* 12 Lea (Tenn.), 121; [8] *City of Salem* v. *Maynes,* 123 Mass. 372.)

McFARLAND, J.—This action was brought to obtain an injunction restraining the defendant, the city of Los Angeles, a municipal corporation, from enforcing certain ordinances of the city prohibiting the erection or maintenance of gas-works within certain parts of said city. A demurrer to the complaint was sustained in the court below and judgment rendered for defendant. From the judgment plaintiff appeals.

On the twenty-sixth day of August, 1901, the city adopted

[1] 49 Am. St. Rep. 93.

[2] 4 Am. St. Rep. 328.

[3] 12 Am. Rep. 385.

[4] 37 Am. Rep. 564.

[5] 16 Am. Dec. 189.

[6] 91 Am. Dec. 472.

[7] 59 Am. Rep. 694.

[8] 47 Am. Rep. 326.

an ordinance, No. 6,663, by which it was provided that "it shall be unlawful for any person, firm, or corporation to erect or cause to be erected, maintain or cause to be maintained, any works, establishment, or manufactory for the manufacture of gas, or any tank, reservoir, or other receptacle for the storage ·of gas, within the corporate limits of the city of Los Angeles, ¯outside of the limits of the district described as follows, to ¯wit:" (And then follows a description of the district.) It ¯was also provided that any person who should violate the above provision should be guilty of a misdemeanor, and upon ·conviction be punished by fine. or imprisonment, or both. On ·the third day of March, 1902, the city adopted another ordi-'nance, No. 7,029, amendatory of the said ordinance No. 6,663. ·This second ordinance merely amends the first by changing the boundaries of the area within which the erection and maintenance of gas-works were prohibited. These two ordi-·nances are the only ones · necessary to be considered. The ·plaintiff was engaged in erecting gas-works within the terri-·tory in which the erection of such· works was prohibited by ¯the second ordinance; and it is averred that, by procurement of the defendant, certain employees of the plaintiff, engaged in labor upon her said gas-works have been arrested and ·prosecuted for a violation of said ordinance, and that de-·fendant threatens to continue to arrest and prosecute her ·employees for such violation. The prayer· of the complaint is, ·that defendant· be enjoined and restrained from enforcing ·said ordinance and from "prosecuting or proceeding with any ·prosecution commenced ·or to be. commenced" under said ordinances against plaintiff or any of her agents or employees. ·There are other averments in the complaint which will· be noticed hereafter.

The general contention of appellant that the ordinances in ·question ·are invalid and void because violative of the four-·teenth amendment to the federal constitution, and of other ·constitutional guaranties, state and federal, of the enjoyment ·of property, or vested rights, the equal protection of the law, etc., is not maintainable. The ordinances were passed in the exercise of. the police power which is fully granted to the city of Los Angeles by statutory law, by its charter, and by the con-stitution of the state. Its charter gives it power to suppress

or prohibit all offensive places of business, and to regu-
late or prohibit explosives, combustibles, or inflammable mate-
rial within the city or any specified part thereof. By the act
of the state legislature of April 4, 1870, entitled "An act
concerning gas-works" (Stats. 1869-1870, p. 815), it is pro-
vided that cities "may also control the location and construc-
tion of works so that they may be erected on suitable localities
to give the least discomfort or annoyance to the public." This
act was expressly continued in force by subdivision 20 of sec-
tion 19 of the Political Code. And by the state constitution
itself (art. XI, sec. 11) it is provided that "any county, city,
town, or township may make and enforce within its limits all
such local, police, sanitary, or other regulations as are not in
conflict with general laws." There is no doubt, therefore,
that the exercise of this police power belongs to the respond-
ent within its territorial limits; and the only question is
whether the adoption of the ordinances in question was a
legitimate exercise of it; for all property is held subject to
that power. An ordinance obviously and undoubtedly foreign
to any of the recognized purposes of the police power, and
interfering with the ordinary enjoyment of property, would,
no doubt, be held by a court to be invalid. But where the
ordinance is reasonably within a proper consideration of and
care for the public health, safety, or comfort, a court will not
disturb the legislative act; it will not substitute its own views
of what is proper in the premises for those of the legislative
body. In *Munn* v. *Illinois,* 94 U. S. 113, the United States
court states the rule thus: "If no state of circumstances could
exist to justify a certain statute, then we may declare this one
void because in excess of the legislative power of this state;
but if it could, we must presume it did. Of the propriety of
legislative interference, within the scope of the legislative
power, the legislature is the exclusive judge." This rule is
very fully discussed and declared in *Power* v. *Commonwealth
of Pennsylvania,* 127 U. S. 678,—the "oleomargarine" case.
(See, also, *Crowley* v. *Christensen,* 137 U. S. 87; and *Canfield*
v. *United States,* 167 U. S. 518.) And it cannot be said judi-
cially that volatile, inflammable, explosive, and bad-smelling
gas is not within the category of things which interfere with
the public safety, welfare, and comfort, and therefore beyond

the reach of the police power. The exercise of this power is not confined to the regulation of only such interferences with the public welfare and comfort as come strictly within the common-law definition of a "nuisance." (*Ex parte Lacey,* 108 Cal. 326;[1] *Ex parte Shrader,* 33 Cal. 283.)

It is averred in the complaint that the said ordinances were adopted not for the purpose of protecting public interests, but for the purpose of protecting and favoring a certain named company engaged in the manufacture and sale of gas in said city. But the motives which induce a legislative body to make a law cannot be considered in a judicial proceeding in which the validity of the law in question is involved. In Cooley's Constitutional Limitations (6th ed., p. 231) it is said: "Although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon. The reasons are the same here as those which preclude an inquiry into the motives of the governor in the exercise of the discretion vested in him exclusively. He is responsible for his acts in such a case, not to the courts, but to the people"—and numerous authorities are referred to which sustain the text. (See, also, *Soon Hing* v. *Crowley,* 113 U. S. 703.)

It is also averred that prior to the adoption of the second ordinance plaintiff had made certain contracts with third parties to furnish materials for and do labor on gas-works which she was about to erect, and had purchased land to be used as a site for such works within the territory where the erection of such works, under the first ordinance, was permitted, and had expended a considerable amount of money in building the foundation of her contemplated works and in partly erecting the same; and that by the second ordinance the boundaries of the excepted district were so changed as to put her said land outside of the territory where gas-works were permitted. And it is further alleged that prior to the adoption of the second ordinance she had commenced to erect her works under a permit of the board of fire commissioners of

[1] 49 Am. St. Rep. 93.

said city, in pursuance of the fire and building ordinances. And she contends that, even if the general principle relied on is not maintainable, these additional facts make the second ordinance invalid as an unwarranted interference with the enjoyment of property, an impairment of the obligations of contracts, etc. But this contention cannot be maintained. The ordinance provides that "it shall be unlawful for any person to erect or maintain" gas-works outside of the described district. This language clearly includes works in course of construction as well as those to be begun in the future; and under the authorities the exercise of the police power clearly covers prohibited buildings partly erected, although great hardship to the builder may follow. It is somewhat difficult to see exactly what is the character and significance of the alleged permit from the fire commissioners. Appellant contends that it was an express contract with the city to allow her to erect and maintain her gas-works. We do not think that this conclusion results from the averments of the complaint. At all events, there was nothing in this permit which took away from the city the police power which it afterward exercised. The city could not thus estop itself from making and enforcing proper police regulations. In *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659, the legislature of the state had granted to plaintiff the privilege of manufacturing fertilizers in the village of Hyde Park and conveying the products through its streets, and plaintiff had expended $200,000 in constructing its plant; but it was held that, notwithstanding these facts, the village, by virtue of its police power, could prohibit the business and compel the plaintiff to abandon its works. In *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 672, the court say: "Rights and privileges arising from contracts with a state are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense, and to the same extent, as are all contracts and all property, whether owned by natural persons or corporations. Whatever, therefore, in the manufacture of or distribution of gas in the city of New Orleans proves to be injurious to the public health, the public comfort, or the public safety, may, notwithstanding the exclusive grant to plaintiff, be prohibited by legislation or by municipal ordinance

passed under legislative authority.'' (See, also, *Barbour* v. *Connelly,* 113 U. S. 27; *Stone* v. *Mississippi,* 101 U. S. 814; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 750; *Ex parte Lacey,* 108 Cal. 326.[1])

Our conclusion is, that the ordinances here involved are valid, and that therefore the judgment should be affirmed. This view makes it unnecessary to consider the question elaborately discussed by counsel,—to wit, whether or not a court of equity will ever enjoin a criminal prosecution.

The judgment appealed from is affirmed.

Shaw, J., Angellotti, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.

Beatty, C. J., Lorigan, J., and Henshaw, J., dissented from the order denying a rehearing, and Van Dyke, J., took no action thereon.