[Crim. No. 95. Third Appellate District.—May 15, 1909.]

## In re JULES JUNQUA, on Habeas Corpus.

CITY ORDINANCE—PERMITTING SOOT TO ESCAPE FROM OIL FURNACE—POLICE POWER—PREVENTION OF NUISANCE.—A city ordinance making it "unlawful for any person, persons, firm or corporation to permit any soot to escape from the smokestack or from the chimney of any furnace within the city . . . in which distillate or crude oil is consumed as fuel," is within the police power conferred upon the city by section 11 of article II of the state constitution, as well as by the charter of the city authorizing it "to determine what are nuisances, and to prevent the same."

ID.—LEGISLATIVE DELEGATION OF POWER TO CITY TO DETERMINE AND PREVENT NUISANCE.—The right to delegate power to a city to determine what are nuisances, and to prevent the same, is within the legislative power of the state.

ID.—EXTENT OF POLICE POWER—COMMON-LAW "NUISANCE" NOT A LIMITATION.—The constitutional grant of police power is only limited to regulations not in conflict with general laws. The police power embraces the right to regulate any class of business the operation of which, unless regulated, may, in the judgment of the appropriate local authority, interfere with the rights of others, and extends to all property within its appropriate exercise. It is not confined to the regulation of only such interference with the public welfare and comfort as comes strictly within the common-law definition of "nuisance."

ID.—POWER OF SUPERVISION BY COURTS.—While the courts will not, in the case of a regulation coming within the appropriate exercise of the police power, substitute its judgment for that of the legislative body, state or local, yet the determination thereof as to what is a proper exercise of its police powers is not final or conclusive, but is subject to supervision by the courts, which will interfere when the case is made plain, either upon the face of the measure or by

extraneous evidence, that needless oppression is worked or that constitutional rights are invaded, or when the circumstances considered in the light of existing conditions, which may be proved by extraneous evidence, show that any local ordinance is unreasonable and oppressive.

ID.—HABEAS CORPUS—PUNISHMENT FOR VIOLATION OF CITY ORDINANCE —ABSENCE OF EXTRANEOUS EVIDENCE.—Upon *habeas corpus* to test the validity of the city ordinance in question, where it cannot be said that there is anything apparent upon the face of the ordinance to indicate that the measure is unreasonable or oppressive, or is an invalid exercise of the police power, or that it would necessarily interfere in the slightest degree with the right of property or other inalienable rights of the petitioner, and there being nothing presented *dehors* the ordinance to show its invalidity, the judgment imposing a penalty for its violation was within the jurisdiction of the city justice's court enforcing the same, and the petitioner must be remanded to the custody of the city chief of police.

PETITION for discharge upon writ of *habeas corpus* from the custody of the chief of police of the city of Sacramento, to test the validity of a conviction in the city justice's court.

The facts are stated in the opinion of the court.

Devine & Butler, for Petitioner.

R. Platnauer, City Attorney, for Respondent.

HART, J.—On the thirtieth day of July, 1908, the petitioner was convicted of a misdemeanor in the violation of Ordinance No. 839 of the city of Sacramento in the city justice's court of said city, and was committed to the custody of the chief of police in default of the payment of the fine imposed upon him by the court. He now claims that the ordinance, for the infringement of the provisions of which he is imprisoned, is invalid "for the reason that it is unreasonable and oppressive," and, therefore, repugnant to the constitution of the state and to the federal constitution. For this reason, he insists, he is entitled to be restored to his liberty through the writ of *habeas corpus*.

Section 1 of the ordinance under which the petitioner was tried and convicted declares that "it shall be unlawful for any person, firm or corporation to permit any soot to escape from the smokestack or from the chimney of any furnace within

the city of Sacramento in which distillate or crude oil is consumed as fuel," and section 2 prescribes a penalty for the violation of the first section.

It is the claim of the petitioner that the ordinance is void upon its face because, under its terms, the mere fact that a person accused of the violation of its provisions may be shown to have permitted soot to escape from the smokestack or chimney of a furnace, maintained and operated by him, in which distillate or crude oil is consumed as a fuel, however small the quantity of the soot so emitted from such smokestack or chimney may be, is sufficient to sustain a conviction. The contention is, in other words, that the board of trustees of the city of Sacramento is not vested with the power to declare that a nuisance which is not a nuisance *per se,* and that the legislature has no authority to delegate to or confer upon the governing body of a municipal corporation the right to exercise such power. This is the specific objection to the ordinance, and upon said objection it is urged with earnestness that the measure is upon its face repugnant to those guaranties of the state and federal constitutions against interference with the personal liberty of the citizen, enjoyment of property and vested rights and the taking of property without due process of law, etc.

The petitioner has presented a large array of authorities which he asserts supports his contention. These we shall not undertake to review, for an examination of them will disclose that generally they are not opposed to the views which we shall here venture to offer in upholding the ordinance under attack.

That the police power is an inherent attribute of every state or commonwealth in the Union is a proposition which will readily be conceded. It is not only a power which inheres in the sovereignty of the states, but is a power the exercise of which by the states is indispensably essential to the health, peace, comfort and welfare generally of the inhabitants thereof. In this state the people themselves, by their constitution, have asserted this power, and have thus expressly conferred its exercise upon all counties, cities, towns and townships within the state. (Art. II, sec. 11.) Under this direct grant, any such county, city, town, etc., may make and enforce within its limits all such police, sanitary, and other regulations as may be deemed necessary for the health, comfort and happi-

ness of its inhabitants. The only limitation upon the exercise of this power prescribed by the constitution is that regulations so made shall not conflict with general laws.

This power embraces the right to regulate any class of business, the operation of which, unless regulated, may, in the judgment of the appropriate local authority, interfere with the rights of others, for, as is said in *Dobbins* v. *City of Los Angeles,* 139 Cal. 179, [96 Am. St. Rep. 95, 72 Pac. 970], "all property is subject to the police power." In other words, the proposition cannot be maintained that the exercise of this power is confined to the regulation only of such interferences with the public welfare and comfort as come strictly within the common-law definition of a "nuisance." (*Dobbins* v. *City of Los Angeles,* 139 Cal. 179, [96 Am. St. Rep. 95, 72 Pac. 970].)

The legislature has expressly conferred upon the legislative authority of the city of Sacramento the power "to determine what are nuisances, and to prevent the same" (eighth subd. of sec. 25, Charter of City of Sacramento—Stats. 1895, p. 552), and the right to so delegate such authority is within the legislative power of the state.

But legislation, either local or general, which, when enacted under the pretext that it represents the exercise of the police power, is shown to be oppressive, thus imposing unnecessary or unreasonably burdensome conditions and restrictions upon and against that class upon which it is designed to directly operate, will not be sustained. And where it appears, either upon its face or from competent evidence extrinsic to the measure itself, that such regulation is unjustly oppressive or unreasonably burdensome in the restrictions prescribed or the conditions it imposes, it will be held void as violative of the constitutional guaranties of the citizens, for the doctrine, once maintained by the courts, "that where an ordinance is reasonably within a proper consideration of and for the public health, safety and comfort, a court will not disturb the legislative act," upon the theory that the legislature has investigated and found the facts of which it has predicated the measure, which constitutes a legislative judgment with reference thereto which is final and conclusive upon the courts, has been exploded, at least in this state. (*In re Smith,* 143 Cal. 368, [77 Pac. 180].) That is to say, that, while the courts will not, in the case of a regulation coming within the

appropriate exercise of the police power, substitute their views for those of the legislature, yet the determination of the legislature as to what is a proper exercise of its police powers is not final or conclusive, but is subject to supervision by the courts. (*Lawton* v. *Steele*, 152 U. S. 133 et seq., [14 Sup. Ct. 499]; *In re Smith*, 143 Cal. 368, [77 Pac. 180].) In the last-mentioned case, the supreme court, whose expressions on the subject under discussion are through Mr. Justice Henshaw, says: "As has been said, there must always be left a large discretion in the legislative body, with the exercise of which the courts will not and have no desire to interfere. Nor will they in any event interfere except where the case be plain that needless oppression is worked and constitutional rights are invaded. But courts are not limited in their inquiry to those cases alone where such a situation is shown upon the reading of the statute. They will consider the circumstances in the light of existing conditions. . . . Owing to the peculiar conditions existing in cities, courts are not keen to question the wisdom of the legislative exercise of their police powers in these respects; but as the same conditions do not exist in the country, county ordinances, passed in the exercise of the same power, may well be scanned with more critical eye. And as it must happen in the case of many of these ordinances that the unreasonableness and oppression is not apparent upon the face thereof, evidence in such cases will be admitted to show the existing conditions"; citing *Yick Wo* v. *Hopkins*, 118 U. S. 356, [6 Sup. Ct. 1064]; *Tugman* v. *Chicago*, 78 Ill. 405; *Oxanna* v. *Allen*, 90 Ala. 468, [8 South. 79]; *People* v. *Armstrong*, 73 Mich. 288, [16 Am. St. Rep. 578, 41 N. W. 275]; *Ex parte Patterson*, 42 Tex. Cr. 256, 58 S. W. 1011; *Cleveland etc. Ry. Co.* v. *Connersville*, 147 Ind. 277, [62 Am. St. Rep. 418, 46 N. E. 579]; *Pieri* v. *Mayor etc. of Shieldsboro*, 42 Miss. 493; *Town of Kosciusko* v. *Slomberg*, 68 Miss. 469, [24 Am. St. Rep. 281, 9 South. 297]; *Corrigan* v. *Gage*, 68 Mo. 541. (See, also, *Wheeler* v. *Plumas County*, 149 Cal. 782, [87 Pac. 802], and *In Matter of McCoy*, ante, p. 116, [101 Pac. 419].)

The case of *Corrigan* v. *Gage*, 68 Mo. 541, was an action to recover on a tax-bill, under a municipal ordinance regulating the construction of sidewalks. The trial court refused to allow evidence showing the unreasonableness and oppressiveness of the requirements of said ordinance, and the supreme court of Missouri, reversing the cause for that ruling, said:

"Speaking in general terms, the authorities of a city may be said to have a large discretion as to the necessity or expediency of the ordinances which they adopt. But their powers in this regard are by no means omnipotent; otherwise the citizens would be without remedy or redress."

It is manifest, from what we have said on this point, that we do not agree with counsel for the respondent that the supreme court, in *In re Smith, supra,* intended to draw a distinction between county and city ordinances by which the principle we have been discussing is made applicable to county to the exclusion of city ordinances. The court says in that case, and in the very nature of things it is essentially true, that there is a marked difference between conditions existing in the country portion of a county and those existing in a city, and that in cities much more drastic police regulations are ordinarily required than in those sections of the county which are sparsely populated, and that, therefore, the courts will examine more critically into county ordinances adopted to concrete and enforce the power of police, to determine whether they do or do not represent the exercise of that power reasonably and without oppression than they will for a similar reason look into city ordinances designed to accomplish the same purpose. This does not mean, however, as we understand the decision, that the courts will refuse to hear evidence, if such hearing in a given case is deemed to be necessary to a solution of the question, in an inquiry prosecuted for the purpose of ascertaining and determining whether a city ordinance whose object is regulation, and which is apparently valid, is not in fact unreasonable and oppressive in its operation, and consequently violative of the constitutional rights of those whose business is thus sought to be regulated. In the first place, we can see no reason in principle for the distinction suggested by the respondent, and, in the second place, it is made very clearly to appear that the court in the Smith case did not intend to make such distinction by the fact that the authorities cited in that case upon the point invariably deal with city ordinances.

But in the case at bar, we cannot say that there is anything apparent on the face of the ordinance which would indicate that the measure is unreasonable or oppressive, or that its enforcement would necessarily interfere in the slightest degree with the right of property or other inalienable rights of the

petitioner. Or, as the supreme court says, in *Dobbins* v. *City of Los Angeles,* 139 Cal. 179, [96 Am. St. Rep. 95, 72 Pac. 970], dealing with an ordinance regulating the manufacture of gas and the effect thereof upon the inhabitants of the neighborhood in which the manufactory is situated, it cannot be said judicially that soot from distillate or crude oil used as fuel is not within the category of things which interfere with the public welfare and comfort, and therefore beyond the reach of the police power.

Whether it is impracticable to so control as to prevent soot emanating from such oil, when used as fuel, from escaping from a chimney or smokestack, or the effect of the regulation, as enforced, will be to prevent the use altogether of such oil as fuel, we cannot say from the face of the ordinance itself. And it may be, so far as we can judicially know to the contrary, that an examination into the matter might disclose that such soot comes from a chimney or smokestack in such small quantities as that its emission therefrom does not have the deleterious effect which we must assume, from the fact of the passage of the ordinance and in the absence of evidence showing the contrary, that the governing board of the city of Sacramento has determined that it has, after (presumptively) an investigation of the facts; or it might be shown, although, we admit we very much doubt it, that such soot emitted from a chimney or a smokestack even in large quantities would not, in a perceptible degree, interfere with the public comfort and welfare. Such a showing would, most assuredly, under the authorities to which we have referred, be a good defense against the enforcement of the ordinance or entitle a party convicted and sentenced for the violation of its provisions to relief from such judgment in a proceeding of the nature of the one before us.

But, as has been said, the subject matter of the ordinance before us is within the jurisdiction of the legislative authority of the city of Sacramento to regulate, in the exercise of its police power, by direct grant from the constitution as well as by express authority from the legislature expressed in the charter of said city, and, as the ordinance, upon its face is, apparently, unobjectionable for any reason here urged against its validity, and there being nothing presented here *dehors* the measure to disclose that the enforcement of its provisions in the case of the petitioner involves an invasion of his con-

stitutional or fundamental rights, it follows that the judgment imposed against and upon the petitioner was within the jurisdiction of the court imposing it, and that, therefore, his restraint by the chief of police of the city of Sacramento is not unlawful.

The writ is, accordingly, discharged and the petitioner remanded.

Chipman, P. J., and Burnett, J., concurred.