## JOHN TROTTER
## v.
## CITY OF CHICAGO.

*Municipal Corporations — Ordinances— Parades and Processions —
" Salvation Army "—Superintendent of Police—Discretion of.*

1.   The city council of the city of Chicago has no power to regulate or prohibit parades or processions as such.

2.   Parades or processions through streets are not nuisances.

3.   A city council having the power to prohibit or regulate, must exercise the same by ordinance, and can not delegate it to the discretion of the chief of police.

4.   The right of the " Salvation Army " to parade is equal to that of any other organization.

5.   An ordinance which operates partially is void.

[Opinion filed May 29, 1889.]

APPEAL from the Criminal Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Messrs. McMURDY & JOB, for appellant.

Mr. C. A. KNIGHT, for appellee.

MORAN, J.   Appellant was arrested and fined on a charge of " parading and marching in procession upon the public street without having first obtained a permit." The proof was that appellant with fourteen other persons marched through the streets with various kinds of musical instruments, drums, cymbals, banners, flags and regalia; that those composing said procession were members of the " Salvation Army," a religious body, that marches to attract others to its place of worship, and that neither appellant nor his companions had a license or permit to parade from the superintendent of police.

The ordinance under which appellant was prosecuted is as

Trotter v. City of Chicago.

follows:    Section 1.  That no parades or processions shall be allowed upon the streets of the city, nor shall any open air public meeting be held upon any ground abutting upon any street or avenue of the city, until a permit therefor shall first be obtained from the police department, under a penalty of not less than $25 nor more than $100.   Such permit shall be issued without fee by the superintendent of police, and shall, in the case of parades or processions, specify the route to be followed upon the streets of the city.

The only clauses of the general incorporation act which, it is contended, authorize the city council to enact such an ordinance, are the provisions conferring powers to regulate the use of the streets and public grounds, and are as follows:  "To regulate and prohibit the exhibition or carrying of banners, placards, advertisements or hand-bills in the streets or public grounds or upon the sidewalks."

" To declare what shall be a nuisance and to abate the same; and to impose a fine upon parties who may create, continue or suffer nuisances to exist."

" To prevent and suppress riots, routs, affrays, noises, disturbances, disorderly assemblies in any public or private place."

" To prevent and regulate the rolling of hoops, playing of ball, flying of kites, or any other amusement or practice having a tendency to annoy persons passing in the streets or on the sidewalk, or to frighten teams and horses."

"It is a general and undisputed proposition of law, that a municipal corporation possesses and can exercise the following powers, and no others:   First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable.   Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power denied."   1 Dillon, Mun. Cor., Sec. 89.

We are unable to find, in any of the provisions of the charter above quoted, or in any other provision thereof, that

the power is granted to the city council to regulate or pro-
hibit parades or processions as such. It is nowhere given in
express words nor can we conclude that it is granted by nec-
essary implication.

It may be that under the power to regulate the use of the
public streets, would be found the power to declare that cer-
tain streets or portions of the streets should not be used by
processions at all, or during certain hours of the day or night;
but such ordinance would have to be impartial and general,
and not be so drawn as to make it possible that discrimination
should be made in enforcing it, against some, and in favor of
others, and in order to be sustained, it would have to appear
that it was designed to subserve some public necessity or con-
venience.

The ordinance can not be said to be a regulation of the use
of the streets. It is, in effect, a prohibition of the use of the
streets for what has always been a common and ordinary use
of them in cities—a use practically inseparable from the
aggregation of large populations, in modern urban communi-
ties. Processions and parades through the streets are not
nuisances, and have never been so considered. True, a pro-
cession may become disorderly or riotous, and degenerate into
a mob, or a parade may be so conducted in the banners which
it displays, or the objects and purposes of its march, or the
disorderly and abhorrent noises in which it indulges, as to
invite a breach of the peace, or to render itself a nuisance, but
this would be under exceptional circumstances, and the indi-
viduals so disporting themselves would be subject to punish-
ment, and are thus under the restraint of law.

Under a popular government like ours, the law allows great
latitude to public demonstrations, whether religious, politi-
cal or social, and it is against the genius of our institutions to
resort to repressive measures which have a tendency to
encroach on the fundamental rights of individuals or of the
general public.

In considering the validity of an ordinance similar to the
one in question, the Supreme Court of Michigan, speaking
through Campbell, C. J., said: "It has been customary from

Trotter v. City of Chicago.

time immemorial, in all free countries and in most civilized countries, for people who are assembled for common purposes to parade together by day, or reasonable hours at night, with banners and other paraphernalia, and with music of various kinds. These processions for political, religious and social demonstrations are resorted to, for the express purpose of keeping up unity of feeling and enthusiasm, and frequently to produce some effect on the public mind by the spectacle of union and numbers. They are a natural product, and exponent of common aims and valuable factors in furthering them. They are only found to any appreciable extent in places having collected inhabitants, for spectators are generally as important as members. They are among the incidental conditions of city life, and are as much to be expected, on suitable occasions, as any other public meeting, and not necessarily more dangerous." Matter of Frazer, 63 Mich. 396.

There is no power granted to the common council which would authorize it to take from the people of this city a privilege exercised freely in all communities throughout the land ever since the organization of the government. To uphold such an ordinance the power to pass it must be clear and controlling, and when there is doubt as to the power, the question must be resolved in favor of the greatest liberty and against repression or arbitrary restraint. But if the council has the power to regulate or prohibit processions in the streets, this ordinance is not a proper exercise thereof. The power, if it exists at all, must be exercised by the council by ordinance, and can not be delegated to the discretion of the chief of police. Kinmundy v. Mahan, 72 Ill. 463; City of East St. Louis v. Wahrung, 50 Ill. 31.

" This by-law is unreasonable because it suppresses what is generally perfectly lawful, and because it leaves the power of permitting or restraining processions and their courses, to an unregulated official discretion, when the whole matter, if regulated at all, must be by permanent, legal provisions operating generally and impartially." Matter of Frazer, *supra.*

Said the Supreme Court of Kansas, speaking of a like provision in an ordinance: "It might be proper, on account of the peculiar conditions of affairs in a city, that street parades should be confined to certain streets, or should be conducted within certain hours of the day, or should be forbidden in the night time, or that the police department should have some previous notice, or that there should be other reasonable regulations respecting them, justified by such a condition that it would be apparent that regulation and not prohibition, was the object of the ordinance; because the power can not extend to prohibition, for the very essence of regulation is the existence of something to be regulated. * * * It is not a reasonable regulation to vest the power arbitrarily in the mayor to grant or refuse permission to any association of persons, combined for legal and meritorious purposes to parade the streets with music." Anderson v. City of Wellington, 19 Pac. Rep. 719; Baltimore v. Radecke, 49 Md.

The ordinance in question applies to all processions, charitable, religious, political or otherwise. It can not be other than partial and discriminating in its practical operation when the granting or refusal of the permit is left to the discretion of one man. No man is so just or impartial as to be safely invested with such power. One chief of police might refuse the Salvation Army; another might exercise his power to repress the parades of the Ancient Order of Hibernians; another might render the members of the Masonic organization liable to a fine for marching in the funeral procession of a deceased brother, and still another might forbid the progress through the streets of a political organization.

These may be extreme suppositions, but they are of possible occurrence. It must be remembered the right of the Salvation Army is equal to any of the others, and though that body may appear grotesque to some, and be the subject, perhaps, of unjust ridicule, that can be no reason why the liberties and rights of its members should not be jealously protected. There can be no true liberty where an individual is clothed with arbitrary power; unregulated discretion is tyranny.

The ordinance may, and most likely does, operate partially, and is unjust, unreasonable and therefore void.

The judgment of the Criminal Court will be reversed.

*Judgment reversed.*

Gary, J., dissenting. I think under the power given to cities to regulate the use of streets, so much of the ordinance as relates to parades and processions upon the streets is valid; that in the nature of things the occasions, when they ought to be prevented or permitted, can not be known and provided for in advance by general ordinance; that a discretion must be lodged somewhere; and that the superintendent of police charged with the direction of the physical force for the preservation of peace and order in the city, is a proper officer to be vested with that discretion.