[Crim. No. 1610. Third Appellate District.—February 14, 1938.]

In the Matter of the Application of LYNN HARTMANN for a Writ of Habeas Corpus.

56

Walter B. Thompson for Petitioner.

U. S. Webb, Attorney-General, Gordon S. Hughes, Deputy Attorney-General, and Hugh B. Bradford, City Attorney, for Respondent.

THOMPSON, J.—By means of a writ of *habeas corpus* the petitioner seeks to obtain his release from custody. He is restrained of his liberty under a warrant of arrest issued

from the police court of the city of Sacramento pursuant to a complaint which was filed against him in that court charging the petitioner with wilfully and unlawfully soliciting in that city subscriptions to magazines without first procuring from the chief of police a canvasser's permit so to do, contrary to the provisions of Ordinance No. 166, fourth series, of that city, duly adopted and in force.

The ordinance which the petitioner is charged with violating reads as follows:

"An ordinance regulating canvassing in the City of Sacramento; defining the term 'Canvassers'; providing a penalty for a violation of this ordinance and making this ordinance an emergency measure to take effect immediately.

"Whereas, criminally inclined persons have been going from house to house in the City of Sacramento representing themselves to be agents or canvassers for newspapers, magazines, periodicals, books and all other publications, and by reason of such pretense have been able to inform themselves as to the possibility of committing burglary or larceny at the premises so visited, and that thereby the commission of such crimes has been increased and facilitated by reason of such pretense on the part of such persons, thus creating an emergency.

"Now, therefore, be it enacted by the council of the City of Sacramento, as follows:

"Section 1. The term 'Canvassers', as covered by this ordinance, is defined to be any person not having an established place of business in the City of Sacramento, who, for himself, or as agent for another, goes from place to place, and from house to house, in the City of Sacramento, soliciting orders or subscriptions for, or selling or disposing of newspapers, magazines, periodicals, books and all other publications, whether collecting advanced payments on such subscriptions or sales, or not.

"Section 2. It shall be unlawful for any canvasser, in the City of Sacramento, to go from place to place, or from house to house, for the purpose of procuring subscriptions for, or selling any newspapers, magazines, periodicals, books or other publications, without having first procured a written permit from the Chief of Police, authorizing the same. To obtain such permit, each canvasser shall appear personally before the Chief of Police and file a written application for such permit, giving the name and address of the applicant and such other

information as the Chief of Police shall require. No permit shall be issued by the Chief of Police to any person who is not a *bona fide* canvasser, as defined in this ordinance, and the publisher of the publication for which the permit is sought, or the duly authorized agent of such publisher, which authority shall be evidenced by an instrument in writing, or by other evidence satisfactory to the Chief of Police.

"Section 3. Any person violating any of the provisions of this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500.00), or by imprisonment in the City Jail not exceeding six (6) months, or by both such fine and imprisonment."

It is conceded the petitioner was engaged in canvassing in the city of Sacramento for subscriptions to magazines for publishing houses located outside of the state of California; that he had no established place of business in that city, and that he had not procured a permit therefor as required by the ordinance above quoted.

It is contended the ordinance is void for the reasons that it conflicts with article I, section 8, of the United States Constitution, which confers upon Congress the exclusive power "to regulate commerce . . . among the several states"; that the ordinance violates article XIV, section 1, of the federal Constitution, which provides that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . . nor deny to any person within its jurisdiction the equal protection of the laws;" that the ordinance is contrary to the provisions of article I, section 11, of the Constitution of California, which declares that "All laws of a general nature shall have a uniform operation," and that the ordinance is also violative of the inhibition of article I, section 21, of the California Constitution, which declares that no citizen or class of citizens shall "be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens".

The respondent asserts that the ordinance is a valid exercise of the police power of the city under its charter which specifically confers upon it the authority to make and enforce all laws and regulations in respect to municipal affairs; that the ordinance was adopted as a reasonable regulation to protect the inhabitants of that city against pretended canvassers who resort to that means of inspecting the premises to secure

information for the purpose of enabling them to subsequently commit larceny or burglary therein.

We are of the opinion the ordinance is not unconstitutional or void. On the contrary we think it is a valid exercise of the police power of the city. It does not unlawfully regulate commerce between states, nor abridge the privileges of citizens of the United States, nor deny to any person the equal protection of the law. It applies uniformly to all individuals of the particular designated class of "canvassers" within or without the city of Sacramento, and within or without the state of California. The only exception to the uniform application of the ordinance refers to those persons who have "an established place of business in the City of Sacramento". Such excepted persons are not required to procure permits to sell magazines and periodicals in their places of business or elsewhere in the city.

The ordinance declares that criminally inclined persons have made a practice of going from house to house under the pretense of canvassing for subscriptions to magazines in order to secure information to aid them in subsequently burglarizing the houses or stealing property from such premises, and that the ordinance was adopted to enable the peace officers to ascertain the good faith and honest motives of all transient canvassers for subscriptions to magazines and periodicals for the purpose of protecting the public against such unlawful practice.

The ordinance was not adopted for the purpose of revenue. It provides for the payment of no license tax. It is solely for the purpose of regulating municipal affairs under the police powers of the city to preserve the peace and general welfare of the community. It has no application to that class of cases which involves merely the levying of taxes on various classes of business for revenue only.

In considering the validity of the present ordinance there appears to be good reason for excepting from its provisions requiring a permit to canvass for subscriptions those individuals who have established places of business within the city. Such persons having fixed places of business in the city are easily accessible and may be deemed to be known to the peace officers or at least they may be readily found and interviewed in case of reported irregularities in the conduct of their business. Canvassers are frequently transients and inaccessible to the officers. All that the ordinance re-

quires is that every person who desires to canvass for sales or subscriptions to newspapers, magazines, periodicals or books in Sacramento shall first personally appear and present to the chief of police for examination his credentials, and give to the officer such other information as may tend to show his good faith in seeking to canvass the community; that he shall sign a written application therefor. Upon satisfactory showing he is thereupon entitled to a permit signed by the chief of police authorizing him to canvass within the city for subscriptions to periodicals. This procedure does not appear to be an unreasonable exercise of police authority to supervise and regulate the business of all similar canvassers within the city in the interest of honest dealing and for the protection of the public. It applies to all canvassers whether they live inside or outside of the city. In the present case the petitioner made no such application for a permit to canvass. He proceeded to canvass the city without authority, contrary to the provisions of the ordinance.

We may not assume the chief of police will arbitrarily refuse to grant permits to canvass for subscriptions without good cause. The presumption is that every officer will perform his full duty in a fair and lawful manner. (*In re Flaherty*, 105 Cal. 558, 562 [38 Pac. 981, 27 L. R. A. 529]; 21 Cal. Jur. 898, sec. 79; sec. 1963, subd. 15, Code Civ. Proc.)

The ordinance in question is authorized as a valid police regulation. Any county, city or town may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws. (Art. XI, sec. 11, Const. of Calif.; *Town of Green River* v. *Fuller Brush Co.*, 65 Fed. (2d) 112 [88 A. L. R. 177]; *Ex parte Haskell*, 112 Cal. 412 [44 Pac. 725, 32 L. R. A. 527]; *E. A. Hoffman Candy Co.* v. *City of Newport Beach*, 120 Cal. App. 525 [8 Pac. (2d) 235].)

In the Green River case, *supra*, an ordinance, prohibiting peddlers from vending or soliciting sales of merchandise within that city was held to be a valid exercise of police powers. The court said:

"It has been uniformly held that while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law making power, and if the regulation operates uniformly upon all persons similarly situated and it

is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially declared to be in contravention of constitutional right.''

Many federal authorities are cited in support of the preceding statement of law.

The court then declares:

'' 'This court has frequently affirmed that the local authorities entrusted with the regulation of such matters, and not the courts, are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with the laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably and unmistakably in excess of any reasonable exercise of the authority conferred.'

''We therefore conclude that the ordinance is an appropriate exercise of the police power.''

With respect to the alleged interference with interstate commerce by the adoption of such regulatory ordinances, quoting with approval from the case of *Sligh* v. *Kirkwood,* 237 U. S. 52 [35 Sup. Ct. 501, 503, 59 L. Ed. 835], the court further says:

'' 'Nor does it make any difference that such regulations incidentally affect interstate commerce, when the object of the regulation is not to that end, but is a legitimate attempt to protect the people of the state.' ''

In conclusion it is said:

'' 'This regulation cannot be declared invalid if within the range of the police power, unless it can be said that it has no reasonable relation to a legitimate purpose to be accomplished in its enactment; and whether such regulation is necessary in the public interest is primarily within the determination of the legislature, assuming the subject to be a proper matter of state regulation.' ''

The case of *Ex parte Haskell, supra,* is conclusive of this proceeding. It determines that an ordinance of a city is not void on account of discrimination which requires a license to be procured by all traveling salesmen of certain specified classes of merchandise whether they live in or out of the city, but which exempts from its provisions all merchants handling the same classes of goods, who have established places of business within the city. That case is decided on the sound principle that the rule against discriminating between individuals of the same class is not violated by plac-

ing traveling salesmen and vendors of goods in one class, and merchants of the same commodities with fixed places of business in another class, because of the difference in their methods of doing business. The business of one class is transitory, while that of the other is stationary.

In the Haskell case an ordinance of the city of Chico was held to be valid which imposes a license tax on all traveling salesmen of certain classes of goods who desire to solicit trade therein "outside of those conducting regular places of business" within the city. The court said with respect to the alleged discrimination of that ordinance:

"Nor is the provision in question unlawfully discriminating. It may be conceded that, if it could be said to discriminate in favor of residents of the city of Chico by requiring such license only from nonresidents engaged in the line of business pursued by Haskell, it would be bad; or if it discriminated against residents of the state, or against merchandise from without, or not the product of, the state, that it would be void, as being in effect a regulation of interstate commerce—something entirely within the power of Congress. But it does neither of these. . . . The provision here involved is general in terms, and applies alike to all residents and nonresidents equally *who do not maintain 'regular places of business' in the city,* . . . It in no way discriminates, as to the class against which it is directed, between those living within the city and those without, but is broad enough to include all of such class wherever residing. It does put into a class by themselves those who prosecute their business by the method therein specified, and discriminates in the amount of license as between such class and merchants having their business located in the municipality, and also as between such class and persons 'selling to the trade', as it is expressed, such as regular drummers and traveling salesmen for commercial houses, who go from place to place soliciting orders from merchants and traders. But such discrimination is lawful, and has been uniformly upheld upon the principle that, although the different classes are engaged in the same general business of selling merchandise, it is in the several instances carried on under such different circumstances, and by methods so essentially dissimilar, and with such widely different facilities for profit, as to furnish just and reasonable ground for such discrimination.''

■ The circumstances applying to the Haskell case are similar to those which are involved in the present proceeding. In this case the ordinance exempts from the necessity of procuring a permit those who have established places of business in the city of Sacramento.

As the Haskell case holds, since canvassing for subscriptions is an entirely different method of selling newspapers, magazines and periodicals from that of disposing of them from an established place of business, they may reasonably be separately classified without violating the rule against discrimination. We are satisfied the ordinance is not unconstitutional on that account.

The case of *In re Robinson*, 68 Cal. App. 744 [230 Pac. 175], upon which the petitioner chiefly relies, is not in conflict with the Haskell case, nor with what we have previously said regarding the principle of discrimination. In the Robinson case, an ordinance of the city of Sacramento was properly held to be void because it clearly and unreasonably discriminated between solicitors for the sale of merchandise as between persons who conducted business outside of the city and those who conducted the same class of business in the same manner within the city. That ordinance required the outside merchant to pay a license of $200 a quarter, and to furnish a bond of $500. It authorized the same class of merchants having places of business established in the city for a period of three months to solicit similar trade in that city in the same manner without giving a bond, paying the license tax or procuring a permit so to do. The distinction between that ordinance and the one involved in the present proceeding is clearly pointed out in both the Haskell and the Robinson opinions. After stating the essential facts of the Haskell case, the author of the Robinson opinion pertinently says:

"The Chico ordinance upheld in the Haskell case did not do the very thing which the Supreme Court declared would make it bad, and which thing the city council of the City of Sacramento did when adopting the ordinance now under consideration. There is a distinct and positive discrimination between solicitors carrying on the same kind of business, taking orders in the same manner, between those representing houses outside of the city of Sacramento and those within the city. One class is placed under a heavy burden, the other is exempted entirely."

The ordinance in the present proceeding, unlike the one which was involved in the Robinson case, does not require a license tax or bond, but it does require all canvassers inside or outside of Sacramento to procure from the chief of police a permit. This ordinance is absolutely uniform in its application *to all canvassers* wherever they may reside. It does not apply to selling publications from an established place of business in Sacramento. But that is a different method of conducting the business. The ordinance seeks only to regulate the practice of canvassing for periodicals, magazines and similar publications. The ordinance, in our opinion, is constitutional and valid.

The writ is denied, and the petitioner remanded to the chief of police of the city of Sacramento.

Pullen, P. J., and Plummer, J., concurred.