BISHOP, J.
We are called upon, in this appeal, to determine upon which side of a fairly well defined line a provision of the Los Angeles Municipal Code falls which prohibits the holding of a procession or parade, on any public street, without a, permit from the Board of Police Commissioners,’ no standard being set up in the code by which the Jmard is required to measure its decision. We have dtoncluded that this case is governed by the principle that legislation is unconstitutional which attempts to make the free*, trade in ideas dependent upon that which, insofar as the legislation speaks, may be an arbitrary decision of an official or official^ body; that those cases which find no fault when such legislation restricts other activities than those involving the expression of ideas, are not applicable.
The appeal is by the People. To a count of a complaint charging that some twenty-six defendants had violated the *877 provisions of section 23.10 of the Los Angeles Municipal Code by participating in and carrying on a parade and procession upon certain city streets, without a permit from the Board of Police Commissioners, a demurrer was interposed, sustained, and a judgment of dismissal entered. If the provisions of the section referred to are unconstitutional, as we have concluded that they are, no result other than an affirmance of the judgment from which the appeal was taken is legally possible.
Section 23.10(a) of the Los Angeles Municipal Code provides : “No person shall hold, conduct, manage, participate in or carry on any parade, march or procession on any street in the City, or beat any drum, gong, triangle, tambourine, or blow, use or play any wind or stringed musical instrument upon any street in the City, unless such person has first made written application for and received from the Board [of Police Commissioners] a permit in writing authorizing such person so to do. All applications for such permits shall set forth:
“ (1) The route along which any such parade, march or procession proposes to travel;
“ (2) The time of the proposed starting of same ;
“ (3) The names of the persons in control of the same or responsible therefor;
“ (4) The purpose of such parade or procession. ’ ’
We find, as we consider the principles involved in this case, that there is a very clean cut distinction made, at some points, between that which may be constitutionally legislated affecting traffic in ideas and that which may be adopted respecting traffic in things. We find an example of it in this statement of a unanimous court in Valentine v. Chrestensen (1942), 316 U.S. 52, 54 [62 S.Ct. 920, 86 L.Ed. 1262, 1265] : “1. This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects purely commercial advertising.” A like distinction was recognized in Pittsford v. City of Los Angeles (1942), 50 Cal.App.2d 25 [122 P.2d 535].
Dealing now with cases involving legislation of the character before us, that is, legislation which makes a course of *878 action unlawful if pursued without a permit, and which leaves the withholding or granting of a permit to an official or official body without any sufficient guide by which the decision to withhold or grant is to be made, we find several unequivocal declarations. In Lovell v. Griffin (1938), 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949], there was under review a city ordinance which attempted to outlaw the distribution of circulars, advertising, or literature of any kind, without the written permission of the city manager being first obtained. The ordinance, declared the Supreme Court with one voice, was “invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his ‘Appeal for the Liberty of Unlicensed Printing.’ And the liberty of the press became initially a right to publish ‘without a license what formerly could be published only with one. ’ While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. [Citing cases.] Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest, form.” We note, in passing, that the court did not even discuss the possibility that the ordinance could be saved by the presumption that the city manager, the “censor,” would act reasonably and not arbitrarily.
In Hague v. Committee for Industrial Organization (1939), 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423], among other things, an ordinance was involved which, by its terms, provided that no public parade or public assembly should take place in the public streets or public parks, without a permit from the Director of Public Safety. If a permit was requested, the director was left with far less latitude than is the Board of Police Commissioners under the provisions of the Municipal Code before us, for the ordinance declared that a request for a permit should only be refused “for the purpose of preventing riots, disturbances or disorderly assemblage.” We think the court’s view sufficiently appears from these words of Mr. Justice Roberts (307 U.S. 515, 516, 83 L.Ed. 1436, 1437) : “Wherever the title of streets and parks may rest, they have *879 immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. . . . We think the court below was right in holding the ordinance quoted in Note 1 void upon its face. It does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent ‘riots, disturbances or disorderly assemblage. ’ It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly ‘prevent’ such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right. ’ ’ The thought thus expressed is quite inconsistent with the idea that the ordinance could be found constitutional because the Director of Safety should be counted upon not to abuse the power vested in him.
Again, in Schneider v. Irvington (1939), 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155], the Supreme Court, with one dissenting vote, struck down an ordinance which, among other things, prohibited the distribution of circulars without a permit from the chief of police. The applicant was to give his name, address and other means of identifying himself, and a permit could be denied if the Chief was satisfied that the applicant was not of good character or that he was acting upon behalf of a project “not free from fraud.” The court condemned the ordinance in these words: (308 U.S. 163, 164, 84 L.Ed. 166) “It bans unlicensed communication of any views or the advocacy of any cause from door to door, and permits canvassing only subject to the power of a police officer to determine, as a censor, what literature may be distributed from house to house and who may distribute it. The applicant must submit to that officer’s judgment evidence as to his good character and as to the absence of fraud in the ‘project’ he proposes to promote or the literature he intends to distribute, and must undergo a burdensome and inquisitorial examination, including photographing and fingerprinting. In the end, his liberty to communicate with the residents of the town at their homes depends upon the exercise of the officer’s discretion.
*880 “As said in Lovell v. Griffin, 303 U.S. 444, 82 L.ed. 949, 58 S.Ct. 666, supra, pamphlets have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees.”
A state statute prohibiting the solicitation of funds for any religious, charitable or philanthropic cause, unless the cause had been approved by the secretary of the public welfare council, was the subject matter under discussion in Cantwell v. Connecticut (1940), 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352], We quote one passage from the unanimous opinion of the court (310 U.S. 306, 84 L.Ed. 1219) : “It is suggested that the statute is to be read as requiring the officer to issue a certificate unless the cause in question is clearly not a religious one; and that if he violates his duty his action will be corrected by a court.
“To this suggestion there are several sufficient answers. The line between a discretionary and a ministerial act is not always easy to mark and the statute has not been construed by the State court to impose a mere ministerial duty on the secretary of the welfare council. Upon his decision as to the nature of the cause, the right to solicit depends. Moreover, 'the availability of a judicial remedy for abuses in the system of licensing still leaves that system one of previous restraint which, in the field of free speech and press, we have held inadmissible. A statute authorizing previous restraint upon the exercise of the guaranteed freedom by judicial decision after trial is as obnoxious to the Constitution as one providing for like restraint by administrative action. ’ ’
Another case falls in line with those we have been listing. In Largent v. Texas (1943), 318 U.S. 418 [63 S.Ct. 667, 87 L.Ed. 873], the cqurt said of an ordinance which declared it to be unlawful to sell books without a permit from the mayor, who was to issue the permit if he deemed it proper or advisable, after a thorough investigation (318 U.S. 422, 87 L.Ed. 877): “. . . this appeal is governed by recent deci *881 sions of this Court involving ordinances which leave the granting or withholding of permits for the distribution of religious publications in the discretion of municipal officers. It is unnecessary to determine whether the distributions of the publications in question are sales or contributions. The mayor issues a permit only if after thorough investigation he ‘deems it proper or advisable.’ Dissemination of ideas depends upon the approval of the distributor by the official. This is administrative censorship in an extreme form. It abridges the freedom of religion, of the press and of speech guaranteed by the Fourteenth Amendment.”
In concluding this phase of our discussion, we refer to Thomas v. Collins (1944), 323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430], only to note that it held invalid a provision interpreted as requiring a permit as a prerequisite to addressing a lawful assemblage, although, apparently, the permit could be had for the asking.
Up to this point we have been considering cases dealing with legislation which required an official permit as a condition precedent to the exercise of one form or another of the right freely to communicate ideas, but set up no sufficient standard, and we have found that the United States Supreme Court has uniformally condemned such legislation as violative of the Fourteenth Amendment. Now we come to a number of cases, decided by the appellate courts of this state, which, dealing with ordinances requiring permits for activities not involving free speech or any cognate right, hold them to be valid. Many of these cases do have some primary standard set up to control the discretion bestowed upon the permit-issuing official, and might be omitted from our list on that ground, but we err on the safe side by including them in the group: In re Flaherty (1895), 105 Cal. 558 [38 P. 981, 27 L.R.A. 529] (beating a drum on a traveled street); Ex parte Luening (1906), 3 Cal.App. 76 [84 P. 445] (carrying a concealed weapon) ; Goytino v. McAleer (1906), 4 Cal.App. 655 [88 P. 991] (conducting pool room) ; Hood v. Melrose (1914), 24 Cal.App. 355 [141 P. 396] (erect a shake house) ; In re Holmes (1921), 187 Cal. 640 [203 P. 398] (conduct a secondhand business) ; Parker v. Colburn (1925), 196 Cal. 169 [236 P. 921] (erect public garage) ; South Pasadena v. San Gabriel (1933), 134 Cal.App. 403, 406 [25 P.2d 516] (drill for water) ; In re Hartmann (1938), 25 Cal.App.2d 55, 60 [76 P.2d 709] (solicit subscriptions of magazines); In re Jones *882 (1943), 56 Cal.App.2d 658 [133 P.2d 418] (carry on hog ranch). To keep the account accurate, we call attention to the fact that there are three cases out of harmony with those just referred to. They are County of Los Angeles v. Hollywood Cemetery Assn. (1899), 124 Cal. 344 [57 P. 153, 71 Am.St.Rep. 75] (establishing cemetery) ; Matter of Application of Dart (1916), 172 Cal. 47 [155 P. 63, Ann.Cas. 1917D 1127, L.R.A. 1916D 905] (solicitation of alms); and In re Wisner (1917), 32 Cal.App. 637 [163 P. 868] (playing musical instrument).
For reasons which will be stated at once, we are not attempting to analyze the various California decisions to see whether they can be reconciled and a principle discovered. We make no comment upon them other than to note that throughout the cases holding valid the ordinances considered, the thought finds frequent expression which is contained in these words in In re Hartmann, supra, 25 Cal.App.2d 55, 60 [76 P.2d 709] : “We may not assume the chief of police will arbitrarily refuse to grant permits to canvass for subscriptions without good cause. The presumption is that every officer will perform his full duty in a fair and lawful manner. (In re Flaherty, 105 Cal. 558, 562 [38 P. 981, 27 L.R.A. 529]. . . .)”
We are not undertaking the task of analyzing these California cases touching upon the problem before us because we have a late pronouncement from our Supreme Court which makes such effort needless. In the case of In re Porterfield (1945), 28 Cal.2d 91 [168 P.2d 706], a city ordinance was held to be void which declared it to be unlawful for any person to solicit membership (for compensation) in any dues requiring organization, without a permit from the city council. An attempt was made in the ordinance to set up a standard by which the council was to guide itself, but the Supreme Court held it to be insufficient to rescue the ordinance from the attack upon it. These passages from the opinion tell their own story (28 Cal.2d 110, 112 [168 P.2d 718, 719]) : “Petitioner contends that section 6 of the ordinance is invalid because it provides for a vague and uncertain subjective test whereby the city council may exercise substantially unrestricted authority to arbitrarily grant or deny licenses. In American Law Reports, Annotated (vol. 12, p. 1436), the general rule on this subject is well stated. ‘[A] statute or ordinance which vests arbitrary discretion with re *883 speet to an ordinarily lawful business ... in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses . . . according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to which all similarly situated might knowingly conform,—is unconstitutional and void. ’ . . .
“Respondent maintains that the ordinance may be sustained if we indulge in a presumption that the council will perform its duty in a fair and impartial manner. (See People v. Globe Grain & Milling Co. (1930), 211 Cal. 121, 126-128 [294 P. 3] ; In re Flaherty (1895), 105 Cal. 558, 562 [38 P. 981, 27 L.R.A. 529] ; 19 Cal.L.Rev. 449.) This contention rests upon the assumption that no question of, or akin to that of, free speech is presented, for where free speech" or any other fundamental right is involved the presumption of proper action by the licensing authority cannot be relied upon. Numerous recent decisions from the United States Supreme Court have struck down ordinances which attempted to vest city officials with virtually unlimited discretionary power to grant or refuse permits and to thereby effectively impose a censorship or previous restraint upon constitutional rights or liberties. (See Lovell v. Griffin (1938), 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949] ; Hague v. C.I.O. (1939), supra, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423] ; Schneider v. State (1939), supra, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155]; Cantwell v. Connecticut (1940), 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352] ; Largent v. Texas (1943), 318 U.S. 418 [63 S.Ct. 667, 87 L.Ed. 873].) As shown in some detail later in this opinion, in at least one aspect of the instant case, the element of free speech cannot be ignored. ’ ’
We conclude, therefore, that whatever might be the fate of our ordinance if it were limited to parades and processions in support of commercial ventures, written’ as it is to forbid parades and processions even though they may have as their object the propagating of ideas, it falls within the federal cases we noted earlier in this opinion, and which are cited at the conclusion of the passage quoted from our Supreme Court’s opinion in the Porterfield case, and so violates the Fourteenth Amendment.
That the purpose of parades and processions is often that of persuading others to adopt and act upon the tenets of the *884 paraders, that is, it is “akin” to free speech, we.believe to be beyond doubt. We know of no case in point in this state— In re Flaherty, supra, 105 Cal. 558, 566 [38 P. 981, 27 L.R.A. 529], took pains to point out: “In the ordinance involved in the case at bar there is no attempt to suppress processions or parades”—but there are several decisions from sister states which not only give recognition to parading as a right cognate to that of free speech, but find invalid such ordinances as ours. We note these two passages from Anderson v. City of Wellington (1888), 40 Kan. 173 [19 P. 719, 722, 723, 10 Am.St.Rep. 175, 2 L.R.A. 110] : “The right of the people in this state, by organization, to co-operate in a common effort, and by a public demonstration or parade to influence public opinion, and impress their strength upon the public mind, and to march upon the public streets of the cities of the states with the usual accompaniments of bands, banners, transparencies, glee clubs, and all the accessories of public meetings, is too firmly established, and has been too often exercised, to be now questioned, or to be made the basis of an ordinance forbidding the same. ...” “All by-laws made to regulate parades must fix the conditions upon which all persons or associations can move upon the public streets expressly and intelligently,—Such conditions operating on all of the same class alike, and being reasonable in their requirements, and not oppressive in their operation; and must not give the power of permitting or restraining processions to an unregulated official discretion, and thus’allow an officer to prevent those with whom he did not agree on controverted questions from calling public attention to the principles of their party, or the objects of their organization, in one of the most effectual methods known to associated effort.”
We note similar views expressed in Rich v. City of Naperville (1891), 42 Ill.App. 222, 223: “Ever since the landing of the Pilgrims from the Mayflower the right to assemble and worship according to the dictates of one’s conscience, and the right to parade in a peaceable manner and for a lawful purpose, have been fostered and regarded as among the fundamental rights of a free people. The spirit of our free institutions allows great latitude in public parades and demonstrations, whether religious or political, and if they dp not threaten the public peace, or substantially interfere with the rights of others, every measure repressing them, whether by legislative enactment, or municipal ordinance, is an encroach *885 ment upon fundamental and constitutional rights. ... If this ordinance is held valid, then may the city council shut off the parades of those whose notions do not suit their views and tastes in politics or religion, and permit like parades of those whose notions do. When men in authority are permitted in their discretion to exercise power so arbitrary, liberty is subverted, and the spirit of our free institutions violated. And it is all the same whether that discretion is exercised by one man or several. Where the granting of the permit is left to the unregulated discretion of a small body of city aldermen, the ordinance can not be other than partial and discriminating in its practical operation.” Remarks of alike import appear in: Frazee’s Case (1886), 63 Mich. 396 [30 N.W. 72, 75, 6 Am.St.Rep. 310] ; Trotter v. City of Chicago (1889), 33 Ill.App. 206, 208, City of Chicago v. Trotter (1891), 136 Ill. 430 [26 N.E. 359] ; and In re Garrabad (1893), 84 Wis. 585 [54 N.W. 1104, 1106, 1108, 36 Am.St.Rep. 948, 19 L.R.A. 858].
These cases, admittedly early ones, are cited, first of all, to establish that, contrary to the opinion expressed in State v. Cox (1940), 91 N.H. 137 [16 A.2d 508], to which we shall shortly turn our attention, a group of persons who desired to make their beliefs known by means of a parade on a public street, come to their public officials not as suppliants for a favor, but as citizens seeking to exercise a right. True, in modern times the methods of communicating ideas have been multiplied. Even so, the highest court of the land has insisted that the ancient method of disseminating opinions by the distribution of pamphlets is also a modern right, constitutionally protected (Lovell v. Griffin, supra, 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949] ; Schneider v. Irvington, supra, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 115]), and we entertain no doubt that the long existing right to parade, subject to regulation though it is, has not become so decrepit through the years that it may be denied with impunity. Whatever the reason, the twenty-six defendants in this case chose to exercise the parade method of expressing their views, and that it was a method in vogue before this century does not destroy its present standing.
The one state case of which we are aware, that holds legislative provisions prohibiting parades without a permit to be valid, where their is no guide explicit, in the legislation which governs the granting, or denial, of the permit, is State v. Cox *886 (1940), 91 N.H. 137 [16 A.2d 508]. We do not find the reasoning of this case persuasive. In the first place, it denies . that the public has a right to make use of its highways as “proper places for the exercise of the freedom of communicating information and disseminating opinion,” a right declared to exist by the United States Supreme Court and other state courts, as we have seen. Nor are we able to follow the New Hampshire Supreme Court in the path it took to find that the legislation before it did not leave it to the uncontrolled discretion of the licensing board to grant or deny a permit to parade. Avowedly in order to give validity to the statute before it, the court read into the statute words which it recognized were necessary, but which are not there. We quote a passage to support our statement (16 A.2d 513): “Also, the act is implicit in its requirement that the licensing authority act reasonably in granting or denying licenses, and with reference to the object of public order on the public ways. If it does not in express terms ‘make comfort or convenience in the use of streets ... the standard of official action’ (Hague v. Committee for Industrial Organization, 307 U.S. 496, 516, 59 S.Ct. 954, 964, 83 L.Ed. 1423), the necessary inference is that it does, based upon the presumption in favor of the validity of legislation as reenforced by the express provision of the act bestowing ‘delegated powers’ upon the authority, as a grant intended to be only of due legislative power which may properly be delegated. The discretion thus vested in the authority is limited in its exercise by the bounds of reason, in uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination. A systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate. The licensing authority has no delegation of power in excess of that which the legislature granting the power has, and the legislature attempted to delegate no power it did not possess. ’ ’
An appeal was taken to the United States Supreme Court from the judgment of the New Hampshire Supreme Court in the Cox case, and the judgment of the state court was affirmed. This much can be said of Cox v. New Hampshire (1940), 312 U.S. 569 [61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396], in support of the People’s contention: The case stresses the right of the state to impose regulations in order to assure the safety and convenience of the people in the use of their highways *887 more than it stresses their right to use the highways for the purposes of propagating ideas. Yet the right to use the public streets for traffic in ideas is not only not denied but is acknowledged as a factor in the situation under consideration. We read in the opinion (312 U.S. 574, 85 L.Ed. 1053); “As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. Lovell v. Griffin, 303 U.S. 444, 451, 82 L.Ed. 949, 953, 58 S.Ct. 666 ; Hague v. Committee for Industrial Organization, 307 U.S. 496, 515, 516, 83 L.Ed. 1423, 1436, 1437, 59 S.Ct. 954 ; Schneider v. Irvington, 308 U.S. 147, 160, 84 L.Ed. 155, 164, 60 S.Ct. 146 ; Cantwell v. Connecticut, 310 U.S. 296, 306, 307, 84 L.Ed. 1213, 1219, 1220, 60 S.Ct. 900, 128 A.L.R. 1352.”
Nor do we find in the opinion any suggestion of the abandonment of the principle, applied in the cases cited in the portions of the opinion quoted in the preceding paragraph, and again applied in the case of Largent v. Texas, supra, 318 U.S. 418 [63 S.Ct. 667, 87 L.Ed. 873], decided after the Cox case, that if a license is required of one who desires to exercise his right freely to convey his thoughts to others, the one empowered to issue the license may not be left free to issue it or not as to him seems best. The case is not authority, contrary to all others, that a city may arbitrarily prohibit parades on its streets, for the court accepted the state statute as interpreted by the state court, as of course it was bound to do (International H. Co. v. Wisconsin Dept. of Taxation (1943), 322 U.S. 435, 445 [64 S.Ct. 1060, 88 L.Ed. 1373, 1381]), and as so interpreted there was no arbitrary prohibition. We note particularly these sentences (312 U.S. 576, 85 L.Ed. 1053, 1054) : “But the court held that the licensing board was not vested with arbitrary power or an unfettered discretion; that its discretion must be exercised with ‘uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination’ ; that a ‘systematic, consistent and just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate. ’ The defendants, said the court, ‘had a right, under the Act, to a license to *888 march when, where and as they did, if after a required investigation it was found that the convenience of the public in the use of the streets would not thereby be unduly disturbed, upon such conditions or changes in time, place and manner as would avoid disturbance. ’ ”
The latest case on the subject before us, of which we are aware, is Trujillo v. City of Walsenburg (1941), 108 Colo. 427 [118 P.2d 1081]. The city ordinance there involved, which declared it to be unlawful to use the streets for a parade without a permit from the Chief of Police, was held to be unconstitutional upon much the same grounds as those, we have advanced in support of our determination. The decision of the Supreme Courts of New Hampshire and of the United States, in the Cox case, were weighed, but found not to justify an approval of the Walsenburg ordinance. ' In particular, the interpretation placed upon its statute by the New Hampshire Supreme Court was considered, but the Colorado Supreme Court commented: "The ordinance before us does not permit of such a construction.”
The ordinance before us contains no provision which warrants us in saying that by its terms the Board of Police Commissioners is limited to consider only the correlative rights of the public to parade and to travel on the streets, when it debates whether or not to issue a permit. It is true that the facts which are called for by the application are all, including the “purpose of such parade or procession,” facts proper to consider if the only question at issue was the adjustment of the two rights, to parade and travel. But nowhere in the ordinance is the board cautioned not to permit their disapproval, or mere lack of approval, of the purpose of the parade to influence their decision. It is not plain from the ordinance that the city council did not expect the board, after careful consideration and acting with the highest motives, to permit the purpose of the paraders to determine, not alone when and where, but also whether, there should be a parade. An ordinance so drawn is invalid, and we are of the opinion that we have no right to add a restriction essential to its validity but which is lacking. If, in order to make legislation of this land constitutional, words may be read into it which are not there, based upon the assumption that only those factors which can, constitutionally, be taken into consideration will be given weight by the permit issuing official, then our Supreme Court in the Porterfield cáse, and the United States *889 ° Supreme Court in the several cases decided by it, failed in a most obvious duty. ‘ ‘ The ordinance before us does not permit of such a construction.”
We are fortified, in this conclusion, by a principle thoroughly established in a field of law nearby to that in which our problem lies. This quotation from People v. Broad (1932), 216 Cal. 1, 7 [12 P. 941, 943], sufficiently expresses the point we would make: “ ‘ The rule is well settled that to constitute due process of law in regard to the taking of property the statute should give the parties interested some adequate remedy for the vindication of their rights . . . and it has accordingly been held that to constitute due process the statute itself must provide for notice of the time and place of hearing where the parties may present in a regular and orderly manner issues of law and fact (Ieck v. Anderson, 57 Cal. 251 [40 Am.Rep. 115]). The same rule was declared in Moffatt v. Hecke, etc., 68 Cal.App. 35 [228 P. 546], where it was held that the essential validity of the law was to be tested not by what has been done under it, but by what may by its authority be done; and where a statute authorizes the taking of private property but makes no provision for hearing or notice, either actual or constructive, such defect is not supplied by the voluntary adoption by public officers of rules covering the situation. So in Security Trust Co. v. Lexington, 203 U.S. 323 [51 L.Ed. 204, 27 Sup.Ct.Rep. 87, 89], a case involving the validity of an assessment, it was held that if a statute makes no provision for notice in any form it is not material that as a matter of grace or favor notice may be given. As the court stated, “it is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is whether any notice is provided by the statute.” Nor can extra official or casual notice, or a hearing granted as a matter of discretion, be deemed a substantial substitute for the due process that the Constitution requires (Stuart v. Palmer, 74 N.Y. 183 [30 Am.Rep. 289] ; Coe v. Armour Fertilizer Works, 237 U.S. 413 [50 L.Ed. 1027, 35 Sup.Ct.Rep. 625] ; Louisville & Nashville R. R. v. Stockyards Co., 212 U.S. 132 [53 L.Ed. 441, 29 Sup.Ct.Rep. 246].)’ ”
That there may be no misunderstanding of our position, we conclude by saying that the invalidity of the present ordinance is not due to the lack of authority in the city to regulate the use of the city’s streets by those who would parade. Of *890 the existence of that power there is no question. It is a power • lodged primarily in the legislative body of the city, however, that is, in the city council, and is to be exercised, not delegated, by it. By this we do not mean that the city council is to endeavor the impossible, that is, to anticipate and cover in its legislation every contingency which may arise, leaving no discretion to any official board. We do mean, however, that as all the streets throughout the vast stretches of the great city of Los Angeles are not at all times so burdened with traffic that at no time and under no conditions can parades be held, and as the holding of parades is a public right, subject to proper regulation and not suppression, the regulatory ordinance must allow parades, when and where traffic conditions permit. To be valid the ordinance may not leave it within the power of any administrative board to issue or withhold a permit, dependent upon the board’s approval or disapproval of the purpose of those who seek it.
The order sustaining the demurrer and dismissing Count I is affirmed.
Shaw, P. J., concurred.