[Crim. No. 2528. First Dist., Div. Two. June 15, 1948.]

In re WESLEY BODKIN, on Habeas Corpus.

Edises, Treuhaft & Condon for Petitioner.

J. F. Coakley, District Attorney (Alameda County), Richard H. Chamberlain, Chief Assistant District Attorney, and William H. Quinn, City Attorney (City of Emeryville), for Respondent.

DOOLING, J.—The petitioner was convicted of a violation of ordinance No. 304 of the city of Emeryville, providing as follows:

"Section 1. Whenever the free passage of any street or sidewalk in the Town of Emeryville shall be obstructed by a crowd, the persons composing such crowd shall disperse or move on when directed to do so by a police officer. It shall

be unlawful for any person to refuse to so disperse or move on when so directed to do so by a police officer as herein provided.''

Petitioner was standing on Peladeau Street, a small, lightly-traveled street in the industrial part of Emeryville, addressing between 100 and 150 workers on the Taft-Hartley Act then pending before Congress. He was directed to move on by a police officer and refused to do so. The court found there had been an ''obstruction'' of the street by the crowd. The conviction was affirmed on appeal.

The ordinance is attacked as unconstitutional in that it is an abridgment of the rights of free speech and assembly, and is a violation of the privileges and immunities clause of the Fourteenth Amendment.

The petitioner concedes that a municipality may ''enact and enforce reasonable regulations for the control of traffic and the use of the streets,'' but urges that there is no power ''under the guise of traffic control or regulation to abridge or deny the freedom of speech, assembly, or the right to petition the government. . . .''

The contention is urged that the decisions of the United States Supreme Court in *Schneider* v. *Irvington,* 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155] ; *Hague* v. *C.I.O.,* 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423] ; and *Valentine* v. *Chrestensen,* 316 U.S. 52 [62 S.Ct. 920, 86 L.Ed. 1262], necessarily overrule the decision of the Washington Supreme Court in *City of Tacoma* v. *Roe,* 190 Wash. 444 [68 P.2d 1028]. There the ordinance involved was to exactly the same effect as the one herein, i. e., obstructing the free passage of the public along public streets was made a misdemeanor. The primary point decided by the Washington court was (p. 1029 [68 P.2d]) : ''We do not think any regulation which tends to facilitate the movement of traffic . . . can be said to be an unreasonable exercise of police power. . . . In fact, such ordinances are conducive to the public peace and safety.'' Certainly there is no inconsistency between the city of Tacoma decision and the dictum more expressly mentioned below in the Schneider case to the effect that the public authorities have a duty to protect the public's right to use the streets.

While not directly in point, the ruling in *City of Yakima* v. *Gorham,* 200 Wash. 564 [94 P.2d 180], is illustrative of the same principle. There the court held that the right of peaceful

picketing could not be exercised in a manner which interfered with or obstructed traffic.

The underlying principle is as stated in the decision of *In re Anderson*, 130 Cal.App. 395, 398-9 [19 P.2d 1027]: "The primary purpose of a highway is the passing and repassing of the public, which is entitled . . . to the full, unobstructed and uninterrupted enjoyment of the entire width of the layout for that purpose."

In *Schneider* v. *Irvington, supra*, 308 U.S. 147, the express point decided was merely that the purpose of keeping the streets clean and of pleasing appearance was not sufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it. But the court further stated: "Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated. So long as the legislation to this end does not abridge the constitutional liberty of one rightfully upon the street to impart information through speech or the distribution of literature, it may lawfully regulate the conduct of those using the streets. For example, a person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations and maintain his position to the stoppage of all traffic; . . ."

It must be noted that in the Schneider case the ordinances in question were forthright prohibitions against any passage of handbills on the public streets.

However, the petitioner urges that the Supreme Court, by the dictum above quoted, definitely limited the scope of regulations on the user of streets for public meetings, i. e., that the street involved must be a crowded, busy street or intersection.

This contention cannot be supported. The essence is whether or not there is a reasonable regulation; or whether the regulation necessarily constitutes an abridgment of constitutional rights.

The ordinance in question, it will be noted, does not prevent, or attempt to prevent, any use of the public streets which does not obstruct the free passage of the general public. There is no absolute prohibition as there was in the ordinance involved in the Schneider case, *supra*. The Hague case, *supra*, involved licenses to hold meetings; and *De Jonge r. Oregon*, 299 U.S. 353 [57 S.Ct. 255, 81 L.Ed. 278], is not

in point, involving the question of the scope of criminal syndicalism laws. In *Hague* v. *C.I.O., supra*, 307 U.S. 496, it is said that the "privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interests of all; . . . and must be exercised in subordination to the general comfort and convenience . . . but it must not, in the guise of regulation, be abridged or denied." In the Valentine case, (316 U. S. 52, 54), the court said: "This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares." The opinion, however, clearly recognizes the principle that primarily the streets are designed for public passage and the use thereof by individuals must be kept subservient to the inherent right of use by the general public.

In the present case there can be no question but that, had the crowd formed for the purpose of observing a traffic accident, a brawl, or a dog fight, and the persons making up the crowd had been obstructing the street to the detriment of the members of the public who wished to proceed thereon about their business, a conviction for refusal to disperse would be readily accepted. It was established in this case that the passage of some members of the public along the street was in fact obstructed. If nobody had desired to use this street at the time another question would be presented. Whether the obstruction merely impaired the progress of one member of the general public, or a thousand, does not alter the case. If one member of the public attempts to pass along a sidewalk obstructed by a crowd, no matter how heavy the normal traffic is or is not, and is unable to do so, he must resort to walking around the obstruction into the street where he is immediately endangered by vehicular traffic. Is it any solace to such a pedestrian to say—as the petitioner would have us say—that since this is not the busiest street in town we may obstruct it to any extent we see fit, and you, a member of the public, should take a more frequently traveled thoroughfare? We think not. The individuals making up the general public have certain rights which the authorities, as is so aptly stated in the Schneider case, *supra,* have a duty to preserve.

The argument that these rights are lessened or nonexistent except when a large number of the members of the public wish to exercise them seems to us specious and untenable.

Petitioner argues further that "the true test of the validity of any legislation is what may be done under the terms thereof (*Abbott* v. *McNutt*, 218 Cal. 225 [22 P.2d 510, 89 A.L.R. 1109]; *County of Los Angeles* v. *Jessup*, 11 Cal.2d 273 [78 P.2d 1131])."

In the Abbott case the court held invalid legislation requiring judges to act in a capacity other than their ordinary judicial position would require. The court contemplated that were the legislation upheld the jurists might be so encumbered with extrajudicial duties as to seriously interfere with their official duties as judges. In the county of Los Angeles case the language favorable to petitioner is a direct quotation from the case of *City of Los Angeles* v. *Lewis,* 175 Cal. 777 [167 P. 390]. In that case the legislation under attack left it open for the county's acquisition of cement plants and operation thereof in permanent competition with private enterprise.

The distinction between that type of case and the one here before us is clear. To say that the test of any legislation is what may be done thereunder without any limitation whatever is an absurdity, for every conceivable class of legislation has inherent in it the possibility of unconstitutional acts of enforcement. The two cases above cited referred to what would be the reasonable permanent effect of the legislation. The rule, as expressed by the Supreme Court, is that the state may incidentally, by reasonable regulations for the benefit of the general public, regulate but not prohibit the individual's exercise of his civil rights.

Since the ordinance here in question is solely a regulation of the use of the public streets, preserving them for the benefit of the public against obstructions and not a restriction on what may be uttered or published, the cases cited for the proposition that the state may not suppress civil liberties except in conformity with the "clear and present danger" rule are not in point.

Again, since the question of whether or not the free passage of the street or sidewalk was "obstructed" is one of fact, it was entirely possible for the petitioner herein to make the same speech on some other busier but broader street where the attendant crowd would not have constituted an "obstruction" within the meaning of the ordinance.

Since the ordinance cannot be said to be an unreasonable regulation on its face, it cannot be held unconstitutional merely because it may also operate to prevent one from presenting his ideas to as large a number of persons at a given place as he might think desirable. Whether the enforcement, in a particular case, might be unconstitutional because arbitrary, unreasonable, or discriminatory, is a question of fact and not now before us.

The writ of habeas corpus is therefore denied.

Goodell, Acting P. J., and Griffin, J. pro tem., concurred.