Appellate Department, Superior Court, Alameda

[Crim. A. No. 28. Feb. 23, 1954.]

THE PEOPLE, Respondent, v. REUEL S. AMDUR, Appellant.

Lawrence Speiser, Staff Counsel, American Civil Liberties Union, for Appellant.

J. F. Coakley, District Attorney (Alameda County), Roy G. Pucci, Deputy District Attorney (Alameda County), Fred C. Hutchinson, City Attorney (City of Berkeley), and Robert T. Anderson, Assistant City Attorney (City of Berkeley), for Respondent.

WAGLER, P. J.—Defendant and appellant, Reuel S. Amdur, was convicted of a violation of section 12.1 of Ordinance No. 3262-N.S. of the city of Berkeley, in that said defendant on or about the 6th day of February, 1953, "unlawfully placed and caused to be placed on a sidewalk a table which obstructed, restricted, and prevented the use of a portion of said sidewalk."

On this appeal appellant asserts (1) that the evidence is insufficient to sustain the judgment; (2) that the ordinance is unconstitutional as written; (3) that the ordinance is unconstitutional as applied; and (4) that the rejection of certain proffered evidence was prejudicial error. Appellant raised the question of constitutionality in the municipal court at the outset of the trial by motion to dismiss, and after his conviction by motion in arrest of judgment.

The ordinance in question provides that "It shall be unlawful for any person to place or cause to be placed anywhere upon any sidewalk or roadway, anything which shall obstruct, restrict or prevent the use of any portion of such sidewalk or roadway; provided that this section shall not apply to the article or things listed in section 12.1-a to and including 12.1-o."* Here follow 15 exceptions covering:

---

*The entire section in question reads as follows:

"Section 12.1. OBSTRUCTIONS ON STREETS AND SIDEWALKS. It shall be unlawful for any person to place or cause to be placed anywhere upon any sidewalk or roadway, anything which shall obstruct, restrict or prevent the use of any portion of such sidewalk or roadway; provided that this section shall not apply to the article or things listed in Sections 12.1-a to and including 12.1-o.

"Section 12.1-a. GOODS IN TRANSIT. Goods, wares, merchandise or

956

(a) goods in transit; (b) construction materials and barricades; (c) trees and shrubs; (d) poles, hydrants, signs, etc.; (e) bicycles racks; (f) gasoline pumps; (g) benches; (h) mail boxes and armed forces recruiting signs; (i) taxicab telephones; (j) newspaper racks and newspapers; (k) periodicals and periodical racks; (l) vending machines; (m) milk cases and boxes; (n) tables for registration of voters; "(o) Tempo-

containers may be allowed on the outer ⅓ of the sidewalk for not to exceed one hour while in the actual course of receipt, delivery or removal.

"Section 12.1-b. CONSTRUCTION MATERIALS AND BARRICADES. Materials used in the construction or repair of any building or structure, together with the necessary pedestrian walkways, barricades and warning signs, when permission has been obtained from the proper City departments.

"Section 12.1-c. TREES AND SHRUBS. Trees, shrubs and flowers with the necessary barricades when planted or maintained either by the City or by private parties under rules and regulations of the Park Department or authority of the Council expressed by resolution or ordinance.

"Section 12.1-d. POLES, HYDRANTS, SIGNS, ETC. Poles, fire and police boxes, lamp posts, parking, street, directional or warning signs, parking meters, drinking fountains, hydrants, flag poles or standards, decorations for public events, sidewalk clocks, barber poles, refuse cans, book return receptacles, barriers and any other similar installation; provided, however, that any such installation belongs to the City of Berkeley or is authorized by ordinance or resolution of the Council.

"Section 12.1-e. BICYCLE RACKS. Bicycle racks of a type and at locations approved by and under such conditions as may be imposed by the Police Department.

"Section 12.1-f. GASOLINE PUMPS. Gasoline pumps that were installed in the sidewalk area prior to July 1, 1932, and were in use on the 1st day of May 1952.

"Section 12.1-g. BENCHES. Benches which are placed on the sidewalk area for the convenience of persons waiting for public transportation, provided such benches have no advertising on them other than the name of the transportation company and are placed in such locations that they do not interfere with the normal use of the sidewalks by pedestrians.

"Section 12.1-h. MAIL BOXES AND ARMED FORCES RECRUITING SIGNS. Mail boxes and armed forces recruiting signs that are placed in such locations that they do not interfere with the normal use of the sidewalk by pedestrians.

"Section 12.1-i. TAXICAB TELEPHONES. Taxicab telephones of a type and at locations approved by and under such conditions as may be imposed by the Police Department, and in accordance with the provisions of the Taxicab Ordinance of this City.

"Section 12.1-j. NEWSPAPER RACKS AND NEWSPAPERS. Newspapers and newspaper racks, of a type and at locations approved by and under such conditions as may be imposed by the Police Department.

"Section 12.1-k. PERIODICALS AND PERIODICAL RACKS. Periodicals and periodical racks which were regularly placed or maintained on the sidewalk area during the three (3) months prior to April 1, 1949, to the extent and at the locations used during such time; provided, however, that such periodicals or periodical racks shall not extend onto the sidewalk area more than twelve (12) inches from the property line. If the placing or maintaining of periodicals or periodical racks is discontinued at any permitted location for a continuous period of thirty (30) days from and after April 1, 1949, periodicals or periodical racks shall not

rary Uses Authorized by Council. Anything for temporary use at such locations and under such conditions as may be authorized by resolution of the Council.''

It is conceded that no rules or regulations have been formulated by anyone for the guidance of those administering Section 12.1-o of the ordinance.

On January 30 appellant filed with the city clerk of the city of Berkeley a written request reading as follows:

''January 30, 1953.

''To the Berkeley City Council:

''I would like to set up a table at Telegraph Avenue and Allston Way (Sather Gate) on February 4 and 6, 1953, between the hours of 10 a. m. and 2 p. m. for the purpose of distributing literature pointing out the basically evil nature of the State as demonstrated in the death sentence meted out to the Rosenbergs, and for the purpose of collecting signatures on a petition opposing murder, whether it be in the name of the State or in the name of the murderer.

''If the Rosenberg case is by this time a fait accompli, then I would like to set up a table at the same place and time for the purpose of facilitating distribution of literature denouncing the notorious Smith Act and the prosecution of the communist party leaders under the Smith Act.

(s) Reuel S. Amdur
1607 Visalia Avenue
Berkeley 7, California''

Thereafter, as was the practice, appellant's request was presented to the chief of police of the city of Berkeley, who on February 2 issued the following memorandum to John D. Phillips, city manager:

''SUBJECT: REQUEST FROM REUEL S. AMDUR, 1607 VISALIA

---

be placed or maintained on the sidewalk area at such locations in the future.

''Section 12.1-l. VENDING MACHINES. Vending machines, when they do not extend onto the sidewalk area more than twelve (12) inches from the property line.

''Section 12.1-m. MILK CASES AND BOXES. Milk cases and boxes when located on an unimproved portion of the sidewalk area at locations approved by and under such conditions as may be imposed by the Police Department.

''Section 12.1-n. TABLES FOR REGISTRATION OF VOTERS. Tables used for the registration of voters at locations approved by and under such conditions as may be imposed by the Police Department.

''Section 12.1-o. TEMPORARY USES AUTHORIZED BY COUNCIL. Anything for temporary use at such locations and under such conditions as may be authorized by resolution of the Council.''

AVENUE FOR PERMISSION TO SET UP TABLE AT TELEGRAPH AND ALLSTON, FEBRUARY 4 AND 6, 1953, BETWEEN 10:00 A. M. AND 2:00 P. M. TO DISTRIBUTE LITERATURE RELATIVE TO THE ROSENBERGS OR TO DISTRIBUTE LITERATURE DENOUNCING THE SMITH ACT.

"This department has no objection to establishment of a table on the sidewalk at the location and under the conditions indicated in the letter signed by Reuel S. Amdur.

(s) J. D. HOLSTROM
Chief of Police"

Appellant's request and the memorandum from the chief of police were presented to the city council at its regular meeting on February 3, 1953. After discussion, his application was by unanimous vote "referred to the file."

On February 6, 1953, at about 11:35 a. m., appellant was observed passing out leaflets while standing in front of a normal size card table which had been placed on the sidewalk near Sather Gate, the southerly entrance to the University of California. The university was in recess between semesters on the day in question, foot traffic was comparatively light, and the table caused no appreciable obstruction to traffic, although some pedestrians did find it necessary to change their course of travel to "deviate around the card table," and in a few instances there were minor physical collisions between pedestrians as a result of walking around the table.

When asked by a police officer whether he had a permit for the table, defendant replied that he did not. When asked further if he had applied for a permit, he replied, "For all intents and purposes a permit was denied by the City Council when the first application was denied, and a second one was filed."* When told that if he did not remove the table he would be arrested, appellant stated, "Go ahead and arrest me. I am a Watsonian anarchist and will stand on my constitutional rights." Appellant was later arrested, tried, convicted and ordered to pay a fine of $25, or in lieu thereof that he "be imprisoned in the Alameda County jail at the rate of one day for each Five Dollars unpaid until said fine is satisfied."

Proof of the above facts which were without essential conflict would, of course, be sufficient to support the judgment

*It appears from the record that appellant had previously on January 23, 1953, applied for a similar permit to set up a table on January 29, 1953, and that said application was denied by the city council on January 27, 1953, two of the eight councilmen voting to grant the permit.

of conviction, since the authority of the city of Berkeley to adopt regulations for the promotion of the health, safety and welfare of the people is established by sections 6 and 11 of article XI of the Constitution of the State of California, and by section 49 of the charter of said city.

At the outset it should be pointed out that the streets and sidewalks of a city are designated primarily for travel and for the transportation of goods to and fro thereon.

The public is entitled to the free and unobstructed use of the entire streets and sidewalks for the purposes of travel, subject only to the reasonable and proper control of the municipality. (*Vanderhurst* v. *Tholcke*, 113 Cal. 147 [45 P. 266, 35 L.R.A. 267] ; *Hill* v. *City of Oxnard*, 46 Cal.App. 624 [189 P. 825] ; *Laura Vincent Co.* v. *City of Selma*, 43 Cal.App.2d 473 [111 P.2d 17] ; 25 Am.Jur. 566.)

The Legislature of the state has declared that the unlawful obstruction of the free passage or use in the customary manner of any public street or highway shall be a public nuisance. (Civ. Code, §§ 3479, 3480; Pen. Code, § 370.) This does not mean, however, that it is unlawful for both persons and property to be temporarily at rest upon a public street. Obstructions of a temporary nature, which are incidental to the use for which the street is primarily intended and which do not unduly and unreasonably interfere with the rights of the public, are permissible, (40 C.J.S. 213) since such temporary appropriation of the street is justified upon the ground of necessity, and a license for it may be implied in the absence of an ordinance expressly conferring the right. (19 Cal.Jur. 112; *Fisher* v. *Los Angeles Pac. Co.*, 21 Cal.App. 677 [132 P. 767] ; 23 A.L.R. 816.)

Even obstructions which are incidental to the primarily intended use of the street are subject to reasonable regulation by the municipality, since "municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of the public and property, the prime purpose to which the streets are dedicated." *Schneider* v. *State*, 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155]. (See also: *Cox* v. *New Hampshire*, 312 U.S. 569 [61 S.Ct. 762, 85 L.Ed. 1049] ; *In re Bodkin*, 86 Cal.App. 2d 208 [194 P.2d 588] ; *Pezold* v. *Amalgamated Meat*, 54 Cal. App.2d 120 [128 P.2d 611].)

Any obstruction not falling within the above category or properly authorized by ordinance or otherwise constitutes

a public nuisance *per se.* (*San Diego* v. *Southern Calif. Tel. Co.,* 92 Cal.App.2d 793 [208 P.2d 27] ; *Irish* v. *Hahn,* 208 Cal. 339 [281 P. 385] ; *Western States G. & E. Co.* v. *Bayside L. Co.,* 182 Cal. 140 [187 P. 735] ; *Hitch* v. *Scholle,* 180 Cal. 467 [181 P. 657] ; *Strong* v. *Sullivan,* 180 Cal. 331 [181 P. 59] ; *San Francisco* v. *Buckman,* 111 Cal. 25 [43 P. 396] ; 25 Am.Jur. 566.) This is true even though the obstruction does not work a positive inconvenience to anyone. (25 Am.Jur. § 273, p. 566.) This rule extends to sidewalks which are a part of the street. (*Ex parte Taylor,* 87 Cal. 91 [25 P. 258].)

▮ That a table of the type here involved placed upon a public sidewalk constitutes an obstruction within the meaning of the statute and the applicable rules of law there can be no question. There can also be little doubt that such a use of the sidewalk is not a use incidental to the primary use for which the sidewalk is intended, and since appellant concedes that the city council had not authorized the obstruction, we must conclude that under such circumstances it constituted a public nuisance. In fact, section 12.2 of the same ordinance which was received in evidence without objection specifically provides that ''anything placed or permitted to remain upon any sidewalk or roadway in violation of section 12.1 of this ordinance, is hereby declared to constitute a nuisance and the Police Department is hereby authorized and empowered to abate such nuisance by removing the same to the custodian of lost property in the Police Department or the Corporation Yard of the City of Berkeley.''

▮ Appellant contends that the ordinance in question is unconstitutional on its face because the language is so broad, indefinite, and lacking in standards that it violates both the First and Fourteenth Amendments of the Constitution of the United States and section 9, article I, of the Constitution of the State of California. Both street meetings and parades, since they necessarily involve a certain amount of interference with the normal use of streets, asserts the appellant, are encompassed within the broad language of the statute, and the statute therefore places a previous restraint upon freedom of speech guaranteed by the First Amendment.

With this contention we cannot agree. Webster's International Dictionary, second edition, defines ''obstruction'' as ''a *thing* that obstructs or impedes, an obstacle, impediment, or hindrance, as in a street, river or design.'' ▮ The words of a statute are to be interpreted according to their common and ordinary acceptation. (*County of Los Angeles* v. *Frisbie,*

19 Cal.2d 634 [122 P.2d 526]; *Smith* v. *Dunn*, 68 Cal. 54 [8 P. 625]; Civil Code, § 13.) ▇ Ordinances, like other statutes, must be given a reasonable construction. (*Healey* v. *Superior Court*, 167 Cal. 22 [138 P. 687]; *Gage* v. *Jordon*, 23 Cal.2d 794 [147 P.2d 387]; 23 Cal.Jur. 788.) ▇ An ordinance should be construed so as to harmonize with other statutes adopted by the same legislative body, if possible (*Healey* v. *Superior Court, supra*), and to aid the design and intent of that body, and to effectuate the evident objects and purposes of the law. (*Los Angeles County* v. *Frisbie, supra*; *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352 [228 P. 654].)

▇ A presumption of constitutionality protects every legislative act, and since a legislative body is presumed to have had the Constitution in mind when passing a statute or ordinance (*People* v. *Superior Court*, 10 Cal.2d 288 [73 P.2d 1221]) it is the duty of the courts to construe legislative enactments so as to uphold their constitutionality wherever possible, and avoid, if possible, any construction that will render a statute unconstitutional. (*Bodinson Manufacturing Co.* v. *California Emp. Com.*, 17 Cal.2d 321 [109 P.2d 935]; *Ex parte Daniels*, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172].)

The ordinance in this case in all of its subdivisions "a" through "n" refers exclusively to inanimate objects. ▇ To assert that subdivision "o" was intended to or should be construed as requiring persons who wish to exercise the fundamental right of freedom of speech upon a public street or sidewalk to first obtain a permit from the city council is most unreasonable and in violation of all sound rules of statutory construction. Such construction would clearly not be in harmony with Berkeley Ordinance No. 2631-N.S. referred to during the trial, which concededly regulates street meetings and parades.

▇ Merely because appellant wished to use a card table as an added convenience in the distribution of his literature does not place such conduct under the protective cloak of the First Amendment. If the validity of regulations designed to keep our streets open and available to all was made to depend upon the motives or desires prompting those who would obstruct them, then the primary purpose for which our streets were intended could be completely frustrated. ▇ "Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. . . . Where a restriction of the use of highways . . .

is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions." (*Cox* v. *New Hampshire*, 312 U.S. 569, 574 [61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396].)

Appellant asserts that the ordinance is void °upon its face for the further reason it reposes an uncontrolled discretion in the City Council to grant or deny a permit. This argument, however, must stand or fall upon the answer to the question: should the ordinance be construed as applying to First Amendment freedoms? The right to exercise these fundamental freedoms is clearly not subject to a regulation of the type set forth in section 12.1-o of the ordinance in question. (See: *Lovell* v. *Griffin*, 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949]; *Hague* v. *C.I.O.*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423]; *Schneider* v. *State* (*Irvington*), 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155]; *Cantwell* v. *Connecticut*, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352]; *Largent* v. *Texas*, 318 U.S. 418 [63 S.Ct. 667, 87 L.Ed. 873]; *Thomas* v. *Collins*, 323 U.S. 516 [65 S.Ct. 315, 89 L.Ed. 430]; *Kunz* v. *New York*, 340 U.S. 290 [71 S.Ct. 312, 95 L.Ed. 267]; *In re Porterfield*, 28 Cal.2d 91 [168 P.2d 706]; *In re Bell*, 19 Cal.2d 488 [122 P.2d 22]; *Haggerty* v. *County of Kings*, 117 Cal.App.2d 470 [256 P.2d 393]; *People* v. *Duffy*, 79 Cal.App.2d Supp. 875 [179 P.2d 876].)

If the ordinance should not be construed as applying to First Amendment freedoms, and we have so decided, we believe the law is equally clear that the ordinance is valid on its face.

While the cases from all jurisdictions dealing with ordinances requiring permits for activities not involving freedom of speech or any cognate right cannot be completely reconciled (12 A.L.R. 1436; 54 A.L.R. 1104; 92 A.L.R. 400), it would appear that the California decisions fall substantially into three factual classifications.

(1) Those which involve the right to engage in an ordinary lawful business or calling—one which has no injurious tendencies and which does not *per se* invite police regulation.

(2) Those cases which involve the right to engage in a business or calling, which although lawful, because of its ten-

dency to become a nuisance if conducted in a certain locality or in a certain manner, *per se* requires police regulation in the interest of public morals, safety or the general welfare.

(3) Those cases dealing with mere privileges or activities which may be completely prohibited, or which in the absence of a permit would be prima facie unlawful or constitute a nuisance *per se.*

These classifications are based upon ultimate questions of fact, and the line of demarcation is not always easily drawn. Under an ever expanding police power, factual situations which at one time or in one locality fall logically within the first group, may just as logically at a later time or in a different locality fall within the second or third classification. (Compare: *In re Dart* (1916), 172 Cal. 47 [155 P. 63] and *Gospel Army* v. *City of Los Angeles* (1952), 27 Cal.2d 232 [163 P.2d 704]; *Los Angeles* v. *Hollywood Cemetery Assn.* (1899), 124 Cal. 344 [57 P. 153] and *Odd Fellows' Cemetery Assn.* v. *San Francisco* (1903), 140 Cal. 226 [73 P. 987].)

Likewise, a business which at one time may have been subject to discretionary regulation may ultimately take on the complexion of an activity which comes within the protective cloak of the First Amendment. (Compare: *Mutual Film Corp.* v. *Industrial Com. of Ohio* (1915), 236 U.S. 230 [35 S.Ct. 387, 59 L.Ed 552], and *Joseph Burstyn, Inc.* v. *Wilson* (1952), 343 U.S. 495 [77 S.Ct. 777, 96 L.Ed. 1098].)

The cases falling in the first category follow the rule that licensing ordinances which vest arbitrary discretion in some public official or body, without prescribing some uniform rule of action or standards to be followed, are unconstitutional and void. (*In re Dart, supra; Hewitt* v. *Medical Examiners,* 148 Cal. 590 [84 P. 39]; *In re Johnston,* 137 Cal. 115 [69 P. 973]; *Sonora* v. *Curtin,* 137 Cal. 583 [70 P. 674]; *Los Angeles* v. *Hollywood Cemetery Assn., supra; In re Wisner,* 32 Cal.App. 637 [163 P. 868].)

The great majority of cases falling factually within the second group involve the construction of ordinances or statutes which in fact do make some attempt, although at times very meager, to set up some rules to serve as a guide to the licensing authority. In some instances the licensing authority has itself formulated rules of procedure. (*Parker* v. *Colburn,* 196 Cal. 169 [236 P. 921]; *In re Holmes,* 187 Cal. 640 [203 P. 398]; *Zemansky* v. *Board of Police Comrs.,* 61 Cal.App.2d 450 [143 P.2d 361]; *In re Jones,* 56 Cal.App.2d 658 [133 P.2d 418]; *In*

re *Hartmann*, 25 Cal.App.2d 55 [76 P.2d 709] ; *Cooperative Junk Co.* v. *Police Comr.*, 38 Cal.App. 676 [177 P. 308] ; *Hood* v. *Melrose*, 24 Cal.App. 355 [141 P. 396] ; *Goytino* v. *McAleer*, 4 Cal.App. 655 [88 P. 991].)

However, standards or rules for the guidance of the licensing authority do not appear to be a prerequisite to the validity of such ordinances or statutes, and they are upheld provided they contain no express authority to the licensing body to indulge in favoritism or to make or enforce discriminatory rules. (*People* v. *Globe Grain and Mill Co.*, 211 Cal. 121 [294 P. 3] ; *In re Holmes, supra*; *South Pasadena* v. *San Gabriel*, 134 Cal.App. 403 [25 P.2d 516].)

Since the case at bar involves a public nuisance, it falls factually within the third classification. These cases come clearly within the rule that the administration of an ordinance which regulates activities that are mere privileges may be left to the uncontrolled discretion of the licensing authority. (*In re Flaherty*, 105 Cal. 558 [38 P. 981] ; *In re Hartmann, supra.*) This rule, and the one applied to cases falling in the second classification which is essentially the same, is based upon the presumption that the licensing authority will not abuse its discretion, and upon the practical impossibility of providing in advance for probable exceptional cases. We accordingly find the ordinance constitutional as written.

The fact that the ordinance gives to the city council an uncontrolled discretion in granting and denying permits does not mean that the council may act arbitrarily or capriciously, or that it may discriminate among applicants, for implicit in the rule of law which upholds ordinances of this character is a binding legal obligation on the part of those administering the ordinance to exercise a reasonable discretion, and a corresponding constitutional obligation to refrain from discrimination. The granting or denying of permits in cases of this character must be based upon considerations related to public health, safety, comfort, morals or the promotion of the general welfare, and the law requires uniform nondiscriminatory and consistent administration. (*Miller* v. *Board of Public Works*, 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479] ; Id., 273 U.S. 781 [47 S.Ct. 460, 71 L.Ed. 889] ; *McKay Jewelers, Inc.* v. *Bowron*, 19 Cal.2d 595 [122 P.2d 543, 139 A.L.R. 1188] ; *Wholesale Tobacco Dealers Bureau* v. *National Candy and Tobacco Co.*, 11 Cal.2d 634 [82 P.2d 3, 118 A.L.R. 486] ; *Graham* v. *Kingwell*, 218 Cal. 658 [24 P.2d 488] ; *People* v. *Associated Oil Co.*,

211 Cal. 93 [294 P. 717]; 16 C.J.S. 549; 11 Cal.Jur.2d 541; *Sullivan* v. *Shaw*, 6 F.Supp. 112.)

Appellant claims that the act of the city council in "referring his application to the file" was equivalent to the denial of a permit. This action, he maintains, was arbitrary and capricious and a violation of his constitutional rights.

At the trial appellant called as witnesses five members of the city council who were present at the meetings which had considered his applications. Each was requested to and did state the factors considered in acting upon the last application. Each testified that the primary consideration was the fact that it was felt that the applicant was not acting in good faith. This conclusion on the part of the city council appears to have been based upon a statement alleged to have been made by applicant to an employee in the office of the city clerk at the time he filed his first application, to the effect that he "hoped that the permit would not be granted, that he wanted to challenge the Council's authority to deny it." A portion of this statement was later by this employee communicated to the city manager, who in turn passed the information on to the city council when applicant's second application was under consideration by the council.

That the statement attributed to appellant was in fact made by him is tacitly conceded since he did not testify at the trial, and it is admitted that after several earlier applications for sidewalk permits in connection with the Rosenberg case had been denied, it was appellant's desire to test the constitutionality of the ordinance and of its application. We find no reasonable basis for considering the motives of an applicant in deciding whether a permit should or should not be granted. The approval of such a standard would constitute an open invitation to discrimination.

In addition to the foregoing testimony, portions of the phonographic recordings of the city council meetings which considered the application of January 23, as well as the application of January 30, were admitted in evidence. From these recordings the conclusion is inescapable that on both occasions one of the primary considerations governing those members of the council who voted on the first occasion to deny applicant's permit, and on the second to refer it to the file, was the fact that they disagreed with the views which according to his application appellant wished to expound.

 However distasteful the political philosophy of the

applicant may have been to members of the city council, no question of a "clear and present danger" being involved, this was not a proper standard to be applied in determining whether the council should grant or deny the permit, except insofar as it may have had a bearing upon the question of public safety or convenience. (See: *Danskin* v. *San Diego Unified Sch. Dist.*, 28 Cal.2d 536 [171 P.2d 885]; *Niemotko* v. *Maryland*, 340 U.S. 268 [71 S.Ct. 325, 95 L.Ed. 267]; *Bridges* v. *California*, 314 U.S. 252 [62 S.Ct. 190, 86 L.Ed. 192]; *Schenck* v. *United States*, 249 U.S. 47 [39 S.Ct. 247, 63 L.Ed. 470].)

These recordings also show, however, that factors having a direct bearing upon questions of public safety and convenience, such as possibility of riot, obstruction of the street, etc., were considered by at least some members of the city council before acting upon the application in question.

If we assume that the action of the city council was arbitrary and capricious and an abuse of discretion, is the wrongful refusal to grant a permit the equivalent of a permit? Is the wrongful refusal of a permit which does not involve an infringement upon rights guaranteed by the Constitution available as a defense to a prosecution for acting without a permit? The precise point has never been decided in this state.

"According to the weight of authority, when a license is refused by the licensing officer, although the applicant has done all that is necessary to entitle him thereto, he has no right to proceed to do the act for which the license is required. In other words, subject to some exceptions, it is said to be a sound general principle of law that when a permit or license to do an act is required by law, the wrongful refusal to issue such permit or license will not justify the performance of the act, the remedy of the applicant being to compel the issue of the permit or license, and not to take the law into his own hands and engage in the action for which the permit or license is required. . . . The unavailability of the wrongful refusal of a license as a defense to a prosecution for acting without a license seems to be the general rule, regardless of the type of license refused." (30 A.L.R.2d 1006. See cases collected at 30 A.L.R.2d 1007-1010.)

In 53 Corpus Juris Secundum, License, section 68, at page 727, the rule is stated as follows: "The fact that accused had applied for the requisite license, tendered the fee, and had

been refused a license, constitutes no defense to a criminal prosecution for acting without a license, unless the license authorities declined to issue a license on the ground that none was required; and it is likewise no defense to show that an application for a license would have been unavailing.''

We consider the following rule quoted in *In re Holmes,* 187 Cal. 640 [203 P. 398], and recently approved by Justice Traynor in *Gospel Army* v. *City of Los Angeles,* 27 Cal.2d 232, 239 [163 P.2d 704], as applying cogently to the case at bar. " 'Laws are not made upon the theory of the total depravity of those who are elected to administer them; and the presumption is that municipal officers will not use these small powers villainously or for the purpose of oppression or mischief.' *If this petitioner had applied for a permit under the requirement of the section of the charter above quoted and had been either whimsically or arbitrarily refused such permit, he might then, as shown in Gaylord* v. *City of Pasadena, supra, have had recourse to the courts for relief from such unjust and arbitrary action.''* (Emphasis ours.) Such relief is always available in this state by use of one or more of the extraordinary writs. This rule represents the sound principle of government by law. We accept it as applicable to this case.

In *Poulos* v. *New Hampshire,* 345 U.S. 395 [73 S.Ct. 760, 97 L.Ed. 1105], the Supreme Court of the United States held that the requirement that such state judicial procedures be followed was not violative of the federal Constitution, even where First Amendment freedoms were involved. A majority of the court, speaking through Mr. Justice Reed, there said: ''Appellant's contention is that since the Constitution guarantees the free exercise of religion, the Council's unlawful refusal to issue the license is a complete defense to this prosecution. His argument asserts that if he can be punished for violation of the valid ordinance because he exercised his right of free speech, after the wrongful refusal of the license, the protection of the Constitution is illusory. He objects that by the Council's refusal of a license, his right to preach may be postponed until a case, possibly after years, reaches this Court for final adjudication of constitutional rights. Poulos takes the position that he may risk speaking without a license and defeat prosecution by showing the license was arbitrarily withheld.

''It must be admitted that judicial correction of arbitrary

refusal by administrators to perform official duties under valid laws is exulcerating and costly. But to allow applicants to proceed without the required permits to run businesses, erect structures, purchase firearms, transport or store explosives or inflammatory products, hold public meetings without prior safety arrangements or take other unauthorized action is apt to cause breaches of the peace or create public dangers. The valid requirements of license are for the good of the applicants and the public. It would be unreal to say that such official failures to act in accordance with state law, redressable by state judicial procedures, are state acts violative of the Federal Constitution."

Since an abuse of discretion on the part of the city council would constitute only an unlawful application of the ordinance, and since we have concluded that a wrongful application thereof, as distinguished from an unconstitutional application of the ordinance, is not available as a defense, it is not necessary for us to decide whether or not there was a reasonable basis for the action of the city council in this case.

There is no substance in appellant's argument that he would be required to waive the right to challenge the validity of the ordinance as written in order to pursue a remedy under the extraordinary writs. ■ The cases holding that the constitutionality of a statute or ordinance may be raised by equity injunction and by action for declaratory relief, or both, are legion.* These same remedies are available if the statute or ordinance, though valid on its face, is applied in an unconstitutional manner.† ■ Fundamental personal rights are not less sacred and not less entitled to injunctive protection than are property rights. (28 Am.Jur., §§ 182, 371.)

---

*Reclamation District No. 1500 v. Superior Court, 171 Cal. 672 [154 P. 845]; Gospel Army v. Los Angeles, 27 Cal. 232 [163 P.2d 704]; Pacific Palisades Assn. v. City of Huntington, 196 Cal. 211 [237 P. 538]; Skaggs v. City of Oakland, 6 Cal.2d 222 [57 P.2d 478]; Ganley v. Claeys, 2 Cal.2d 266 [40 P.2d 817]; Hague v. C.I.O., 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed 423]; Ray v. Parker, 15 Cal.2d 275 [101 P.2d 665]; Wheeler v. Herbert, 152 Cal. 224 [92 P. 353]; Bueneman v. City of Santa Barbara, 8 Cal.2d 405 [65 P.2d 884]; Skinner v. Coy, 13 Cal.2d 407 [90 P.2d 296]; People v. Globe Grain & Milling Co., 211 Cal. 121 [294 P. 3]; LaFranchi v. City of Santa Rosa, 8 Cal.2d 331 [65 P.2d 1301]; Cal. Drive-In v. Clark, 22 Cal.2d 287 [140 P.2d 657]; McKay Jewelers Inc. v. Bowron, 19 Cal.2d 595 [122 P.2d 543].

†Ray v. Parker, 15 Cal.2d 275 [101 P.2d 665]; Brock v. Superior Court, 12 Cal.2d 605 [86 P.2d 805]; Wade v. San Francisco, 82 Cal.App.2d 337 [186 P.2d 181]; People v. Gordon, 105 Cal.App.2d 711 [234 P.2d 287]; Title Guarantee & Trust Co. v. Garrott, 42 Cal.App. 152 [183 P. 470]; McCarthy v. City of Manhattan Beach. 41 Cal.2d 879 [264 P.2d 932].

■ While as a general rule mandamus is not the accepted method for raising the question of the constitutionality of an ordinance or statute (*Hadden Inc.* v. *City of Inglewood,* 101 Cal.App.2d 47 [224 P.2d 913]) it too may be employed in proper cases. (*Reynolds* v. *Barrett,* 12 Cal.2d 244 [83 P.2d 29] ; *Bernstein* v. *Smutz,* 83 Cal.App.2d 108 [188 P.2d 48] ; *Bleuel* v. *City of Oakland,* 87 Cal.App. 594 [262 P. 477] ; *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536 [171 P.2d 885].)

■ Since Code Civ. Proc., § 1094.5, was not intended to apply to the review of quasi-judicial administrative action of the type here involved, (see Tenth Biennial Report, Judicial Council of California) it would appear that where no constitutional question is involved either certiorari or mandamus is an appropriate remedy to test the proper exercise of discretion by a local administrative body in a case of this character. (*Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P. 349].)

■ Where legitimate grounds exist to challenge the constitutionality of an ordinance or of its application, there appears to be no valid reason why an aggrieved party in a proper case should not be permitted to bring an equity action to enjoin the enforcement thereof, and in the same proceeding request alternative relief in the event the constitutionality of the ordinance should be upheld. Such procedure would involve prejudice to no one. ■ Once equity has acquired jurisdiction, it may retain it and dispose of the entire controversy (10 Cal.Jur. 4, 449), even though this involves the determination of purely legal rights (28 Am.Jur., §§ 302, 474). Under the procedure herein suggested, in the event of an adverse ruling the appellant would have immediate access to the District Court of Appeal and to the Supreme Court. Under the procedure adopted by appellant, if his conviction should be sustained it would be necessary for him to submit to imprisonment in order to obtain a review of the case by the higher courts.

■ The fact that an ordinance is unconstitutional as written (*In re Deane,* 8 Cal.2d 599 [67 P.2d 333] ; *In re Zany,* 20 Cal.App. 360 [129 P. 295] ; *In re Dart,* 172 Cal. 47 [155 P. 63]) or that it has been unconstitutionally applied (*Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220] ; *In re Smith,* 143 Cal. 368 [77 P. 180]) is always available as a defense to a prosecution for the violation thereof,

and it is in this connection that the trial court committed error which necessitates a reversal of the case. ▓▓▓ At the trial appellant offered in evidence all of the sidewalk table applications considered by the city council between October 1948 and February 1953. In addition to the two filed by appellant, these totaled 42 in number. He also offered in evidence the recommendation of the Berkeley Police Department and the official resolution of the city council in connection with each application, as well as the phonographic recordings of the proceedings of the city council in connection therewith. All of this evidence was excluded on the ground that it was immaterial.

While this evidence appears to have been available to the trial court, since the record shows that a subpoena duces tecum was served upon the city manager for the production thereof, it was apparently not marked for identification when rejected. Except for the names of the applicants and the date on which each application was acted upon by the city council, this evidence has not been included in the record. From the names of the applicants, however, it may be legitimately inferred that the use to be made of the sidewalk table in most cases was as a convenience or adjunct to the public forum.*

From the discussion in the record relative to the admissibility of this evidence, it is also clear that it was offered for the express purpose of showing discrimination in the administration of the ordinance. ▓▓▓ Since this issue was ruled out by the trial court, an error in the exclusion of such evidence may be claimed on appeal, even though the facts shown by the proffered evidence are not before us. (*Heimann* v. *Los Angeles*, 30 Cal.2d 746 [185 P.2d 597]; *Caminetti* v. *Pacific Mut. Life Ins. Co.*, 23 Cal.2d 94 [142 P.2d 741]; *Phillips* v. *Powell*, 210 Cal. 39 [290 P. 441].)

▓▓▓ In his opening brief appellant asserts that the

---

*The 42 applications considered by the city council during the period mentioned were filed by the following organizations: Eisenhower and/or Nixon Committee—five applications; Stevenson and/or Sparkman Committee—four applications; Berkeley College Chapter, National Association for the Advancement of Colored People — four applications; Students for Democratic Action—four applications; Committees to Defend Rosenbergs—four applications; Students' Civil Liberties Union—two applications; Socialist Party, Crusade for Freedom, Students for Wallace, U. S. Red Cross Fund, the San Francisco Chronicle, Guide Dogs for the Blind, The Anvil Club, Disabled Veterans, Inc., Federation for Repeal of Levering Act, Flood and Famine Relief for India, Inter-Faith Council, American Legion Post 402, Youth Committee for Hallinan and Bass, Students Committee for Students Rights and other campus groups—one application each.

documentary evidence showed that all 44 applications received a favorable recommendation from the Police Department; that of the 44 applications considered by the city council 36 were granted; that of the eight denied, six were in connection with petitions urging executive clemency for the Rosenbergs. Although the People have undertaken in their brief to correct misstatements of fact contained in appellant's opening brief, they do not deny the foregoing facts as set forth by the appellant.

Appellant asserts further that there is nothing to distinguish the eight cases in which permits were denied from the 36 cases in which permits were granted, other than disagreement by the majority of the city council with the purposes and views of the applicants, and that this conclusion will be substantiated by the phonographic recordings which were excluded from evidence.

These facts, if proved, would constitute evidence that the city council in the instant case applied the ordinance in a discriminatory manner, hence in an unconstitutional manner, in violation of the equal protection clause of the Fourteenth Amendment of the federal Constitution, and of article I, section 21, of the Constitution of the State of California, which reads as follows: "No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the Legislature, nor shall any citizen or class of citizens be granted privileges or immunities, which upon the same terms shall not be granted to all citizens." (See *Fowler* v. *Rhode Island*, 345 U.S. 67 [97 L.Ed. 828, 73 S.Ct. 526]; *Niemotko* v. *Maryland*, 340 U.S. 268 [71 S.Ct. 325, 95 L.Ed. 267]; *Yick Wo* v. *Hopkins*, 188 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220]; *In re Smith*, 143 Cal. 368 [77 P. 180]; *In re Junqua*, 10 Cal.App. 602 [103 P. 159].)

The latest pronouncement by the United States Supreme Court on this subject is to be found in the case of *Fowler* v. *Rhode Island* (1953), *supra,* and it is determinative of this appeal. The Fowler case involved the application of the following ordinance adopted by the city of Pawtucket: "No person shall address any political or religious meeting in any public park; but this section shall not be construed to prohibit any political or religious club or society from visiting any public park in a body, provided that no public address shall be made under the auspices of such club or society in such park." The constitutionality of the ordinance as written was conceded.

Jehovah's Witnesses, a religious sect, assembled in Slater Park of Pawtucket for a meeting which was conceded to be religious in character. Fowler was invited to and he did attend and address the meeting. Appellant was arrested, tried, and found guilty over objections that the ordinance as so construed and applied violated the First and the Fourteenth Amendments. His conviction was affirmed by the Rhode Island Supreme Court.

On the oral argument before the Supreme Court the assistant attorney general conceded that the ordinance as construed and applied did not prevent church services at the park, that Catholics could hold mass in Slater Park and Protestants could conduct their church services there without violating the ordinance. The Supreme Court said: "That broad concession, made in oral argument, is fatal to Rhode Island's case. For it plainly shows that a religious service of Jehovah's Witnesses is treated differently than a religious service of other sects. That amounts to the state preferring some religious groups over this one. In *Niemotko* v. *Maryland,* 340 U.S. 268, 272-273, [71 S.Ct. 325, 95 L.Ed. 267], we had a case on all fours with this one. There a public park, open to all religious groups, was denied Jehovah's Witnesses because of the dislike which the local officials had of those people and their views. That was a discrimination which we held to be barred by the First and Fourteenth Amendments."

The city of Berkeley was under no duty to permit the use of tables on its sidewalks as an adjunct to the public forum, but if it has granted this privilege to some, it may not deny the same privilege to others under similar circumstances merely because its officials disagree with their views.

The judgment is reversed. A new trial is ordered. On the new trial the court is directed to admit all competent evidence offered on the issue of the unconstitutional application of the ordinance in question.

Ledwich, J., and Hoyt, J., concurred.