[Civ. No. 44865. First Dist., Div. Four. Mar. 6, 1979.]

JAMES E. O'CONNOR et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
SAN FRANCISCO POLICE COMMISSION et al., Real Parties in
Interest.

[Civ. No. 44907. First Dist., Div. Four. Mar. 6, 1979.]

LUXOR CAB COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
THE CITY AND COUNTY OF SAN FRANCISCO et al.,
Real Parties in Interest.

108

## Counsel

Howard, Prim, Rice, Nemerovski, Canady & Pollak, Jerome B. Falk, Jr., Stephen M. Tennis, Steven L. Mayer, Lew & Fong, Norman Lew, Raymond H. Levy, Christopher A. Brose and Jeffrey T. Wilber for Petitioners.

George Agnost, City Attorney, and Steven A. Diaz, Deputy City Attorney, for Real Parties in Interest.

No appearance for Respondent.

**OPINION**

**CHRISTIAN, J.**—James E. O'Connor et al., and Luxor Cab Company et al., seek writs of mandate to compel respondent superior court to issue preliminary injunctions to prevent real parties in interest, the City and County of San Francisco, the San Francisco Police Commission, Charles R. Gain, and the Controller of the City and County of San Francisco, from enforcing a measure adopted by popular vote. Relief is sought on two theories: that the measure was not properly submitted to the voters and that it is unconstitutional.

■ An order denying a preliminary injunction is subject to review on appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 77, p. 4088.) It appeared to this court that appeal was an adequate remedy, and that if necessary, a writ of supersedeas could be issued to preserve the subject matter of the litigation pending determination of the appeals. (*People* ex rel. *S.F. Bay etc. Com.* v. *Town of Emeryville* (1968) 69 Cal.2d 533 [72 Cal.Rptr. 790, 446 P.2d 790].) On that basis the petitions were denied. ■ The Supreme Court granted hearing as to both petitions and retransferred the causes to this court with directions to issue alternative writs of mandate. That action determines for the purpose of further proceedings in this court that there is no adequate remedy in the ordinary course of law. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193].)

These cases involve a challenge to an initiative ordinance approved by the voters of San Francisco on June 6, 1978, known as Proposition K. The measure compels all existing taxicab permittees to surrender their permits in exchange for new permits which "shall be non-transferable and non-assignable either expressly or by operation of law." (Prop. K, § 4, subd. (b).) It also provides that "[a]ny such surrender and exchange shall be without fee to the permit holder." The new permits will be automatically revoked upon (1) the death of the permit holder, if an individual, or (2) apparently, the sale or transfer of 10 percent or more of the stock or assets of a corporate permit holder. (Prop. K, § 5, subd. (a).) No person may hold more than one permit, and permits may be held only by natural persons, except in the case of legal entities which presently hold existing permits. (Prop. K., § 2, subds. (c), (d).) The registrar of voters, on June 21, 1978, certified that the ordinance was adopted at a city general election.

Petitioners all hold vehicle for hire permits issued by the City and County of San Francisco. Before Proposition K was enacted, the operation of taxicabs and other motor vehicles for hire was regulated by article 16, sections 1075-1190, of the San Francisco Municipal Code, sometimes known as the Police Code. The police commission was authorized to issue permits upon determining that "public convenience and necessity require the proposed motor vehicle for hire service for which application for a license or permit is made." (Police Code, § 1075.) In determining whether public convenience and necessity were present, the commission was authorized to take into consideration all pertinent facts: it was required to make specific findings in each case that (1) the applicant was financially responsible; (2) the applicant was under efficient management, earning a fair and reasonable return on its capital; (3) the persons, firms or corporations holding outstanding permits were, under normal conditions, inadequately serving the public; and (4) the applicant had complied with applicable provisions of the Municipal Code and pertinent state or federal laws. (Police Code, § 1076.)

Section 1079 of the Police Code made provisions for transfer of permits: "All such permits and licenses granted . . . shall be transferable upon the consent of the Police Commission, after written application shall first have been made to said Commission and upon payment of the fee required . . . ."

More than 700 taxicab permits, and a substantial number of other motor vehicle for hire permits were outstanding when Proposition K was enacted. Changes in the entities holding permits had been effected primarily through the transfer of outstanding permits for a consideration paid by the transferee to the transferor (§ 1079). Over the years the usual payment exacted by transferors has increased as the number of outstanding permits authorized by the police commission remained largely constant. The commission has routinely allowed the transfer of taxicab and other permits to and from individuals and entities of all types. It also routinely gave effect to court orders requiring sales or other transfers of permits in connection with domestic relations proceedings, execution sales, decrees of distribution, and bankruptcy proceedings. The commission also recognized the use of permits as security in financing arrangements.

The code provided that "all rights herein granted may be rescinded and ordered revoked by the Police Commission *for cause.*" (Police Code, § 1079, italics added.) Similarly, section 1130 provided that such revoca-

tions could be made *"only for good cause* shown upon notice and hearing." (Italics added.)

I

■ It is contended that Proposition K "was not properly put before the electorate and thus is void." This contention is based on the following language of section 9.108 of the city charter: "Any ordinance which the supervisors are empowered to pass may be submitted to the electors by a majority of the board at a general election or at a special election called for the purpose, said election to be held not less than thirty days from the date of the call. Any such ordinance may be proposed by one-third of the supervisors, or by the mayor, and when so proposed shall be submitted to the electors at the next succeeding general election." Only five of the eleven supervisors joined in submitting Proposition K to the registrar of voters for presentation to the electorate. It is argued that section 9.108 requires that a measure may be proposed to the board of supervisors by not less than one-third of its members, but that a measure so proposed is not to be placed on the ballot unless the proposal receives the assent of a majority of the board.

This construction of section 9.108 cannot be accepted. We conclude that an ordinance may be submitted by a majority of the board at a general election or at a special election called for the purpose. An ordinance may also be proposed for referendum by one-third of the supervisors or by the mayor; in the latter event a special election cannot be called and the measure will be submitted to the electors only at the next succeeding general election. The action of five supervisors in proposing Proposition K was effective.

Proposition K was voted upon at the June 6, 1978, state primary election. Therefore, it must be determined whether that election was a general election within the meaning of section 9.108. Elections Code section 20 defines "general election" as "the election held throughout the state on the first Tuesday after the first Monday of November in each even-numbered year" and section 27 defines "special election" as "an election, the specific time for the holding of which is not prescribed by law." Therefore, the election at which Proposition K was voted upon does not fall within either of those statutory definitions. The June 6, 1978, election was, for purposes of state law, a direct primary, i.e., "the primary election held on the first Tuesday after the first Monday in June in each even-numbered year . . . ." (Elec. Code, § 23.) Elections Code section

22807 provides that: "A proposition may be submitted at a regular election, or a special election may be called, by ordinance or resolution, for the purpose of voting on a proposition." A "regular election" is an election, the specific time for the holding of which is prescribed by law. (Elec. Code, § 26.) Therefore, a direct primary is a regular election for purposes of the Elections Code. Section 9.108 of the city charter does not show an intention to create a different requirement for city elections. We conclude that it was proper for at least one-third of the supervisors to submit the measure to the electorate at the June primary.

Having expressed these views we do not reach the question whether a challenge to the election procedure is cognizable in these proceedings. Petitioners do not allege that they sought a writ or injunction to prevent Proposition K from being placed on the ballot prior to the election. "The general rule is that mandamus lies to compel the removal of anything placed on the ballot that is not authorized by law." (28 Cal.Jur.3d, Elections, § 247, p. 597.) Where an available pre-election remedy was not pursued, we explicitly refrain from intimating that the present challenge to the election process could prevail if petitioners' construction of section 9.108 of the city charter were correct.

## II

Petitioners contend that Proposition K unconstitutionally impairs the obligation of contract and takes property without just compensation determined according to due process.

Real parties in interest defend Proposition K with the contention that motor vehicle for hire permits are licenses and privileges granted pursuant to the police power, are not contracts, and do not convey vested rights. In *Luxor Cab Co.* v. *Cahill* (1971) 21 Cal.App.3d 551 [98 Cal.Rptr. 576], this court affirmed a judgment which had denied an injunction and writ of mandate sought to prevent the board of permit appeals from issuing new certificates for the operation of taxicabs. In that case, the appellants argued that the board's issuance of the new certificates infringed on vested rights. The court concluded "[t]he use of streets by taxicabs is a privilege that may be granted or withheld without violating either due process or equal protection. This privilege may be granted exclusively or nonexclusively to render public services (*In re Petersen,* 51 Cal.2d 177, 182-183 [331 P.2d 24]). In any event, the granting or withholding of a privilege based upon certificates of public convenience and necessity presents no judicial controversy touching on the impair-

ment of vested rights (*San Diego etc. Ferry Co.* v. *Railroad Com.*, 210 Cal. 504, 513 [292 P. 640])." (*Id.*, at p. 558. Also see *People* v. *Galena* (1937) 24 Cal.App.2d Supp. 770 [70 P.2d 724].)

Similarly, in *Sievert* v. *City of National City* (1976) 60 Cal.App.3d 234 [131 Cal.Rptr. 358], the Court of Appeal affirmed a summary judgment which had held a city ordinance regulating ambulances to be valid. The court stated: "The use of public streets for private enterprise is a special privilege peculiarly subject to regulation, and may be withheld on reasonable grounds related to public safety, health and welfare. There is no vested or constitutional right to use a public street for conducting private business (*People* v. *Galena,* 24 Cal.App.2d Supp. 770, 775 [70 P.2d 724]; *People* v. *Amdur,* 123 Cal.App.2d Supp. 951, 964 [267 P.2d 445]; McQuillin, Municipal Corporations (3d ed.) § 24.669)." (60 Cal.App.3d at p. 236). A license or permit to engage in the taxicab business, issued by the city pursuant to its police power, does not convey a vested property right.

Contrary to petitioners' contentions, an ordinance adopted in the exercise of the police power does not create contract rights in the continuation of the regulation. Section 1079 provided that "[a]ll such permits and licenses granted . . . shall be transferable upon the consent of the Police Commission, after written application shall first have been made to said Commission and upon payment of the fee required . . . ." No standards govern the police commission's consent to transfers, other than those set forth in sections 1075 and 1076. Section 1075 authorized the police commission to issue taxicab permits upon determining that "public convenience and necessity" so required and section 1076 set forth what facts were to be considered in evaluating "public convenience and necessity." Even if the police commission had routinely permitted the transfer of taxicab permits, the ordinance did not provide for continuation of that practice.

■ Petitioners also contend that the ordinance, if applied to them, would be given an unconstitutional retroactive effect. But the fact that an enactment alters legal relationships and disappoints business expectations is not fatal. Such a law is invalid only if it encroaches on vested rights or impairs the obligations of contract. (*Rosenblatt* v. *California State Board of Pharmacy* (1945) 69 Cal.App.2d 69, 72 [158 P.2d 199].) We have seen that no vested rights in the taxi permits existed. None of the petitioners claims to have entered into a contract for the transfer of a permit to a third party prior to the effective date of Proposition K, which would now

be adversely affected by application of the new ordinance. Since we have concluded that petitioners do not possess a vested right to the free transferability of their permits, the retrospective aspect of the statute is not invalid.

### III

It is contended that real parties in interest are estopped from giving effect to Proposition K. This contention has no substance. ■ "An estoppel also cannot be invoked to enlarge the power of a public agency or to defeat the effective operation of a policy or statute adopted for the protection of the public." (30 Cal.Jur.3d, Estoppel and Waiver, § 4, p. 700.)

The alternative writs of mandate are discharged and the petitions are denied.

Caldecott, P. J., and Drummond, J.,* concurred.

Petitions for a rehearing were denied March 23, 1979, and petitioners' applications for a hearing by the Supreme Court were denied May 3, 1979. Bird, C. J., did not participate therein.

---

*Assigned by the Chairperson of the Judicial Council.